## JACOB C. SHAFER *vs.* WILLIAM P. WILSON.

*Evidence in an Action for Damages—Liability for Negligence—
Rights of Adjacent owners of land to the Support afforded
to each by the other's soil—Liability for the loss of Profits
arising from the Plaintiff's business, occasioned by the Act of
the Defendant—Conjectural Profits—Erroneous Prayer—
Notice of an intention to Improve one's Property—Damnum
absque injuria—Remote Damage.*

In an action for damages for the breaking up of the plaintiff's business by the
acts of the defendant, the plaintiff as witness for himself being asked "what
were about the usual profits of your business prior to the commencement of
the digging by S," stated that they were "from $15 to $20 per day." On
objection both to the question and answer, it was HELD:

1st. That both the question and answer were unobjectionable.

2nd. That to enable the jury to form an estimate of the plaintiff's damage it
was necessary to show the actual extent of his usual profits, before the de-
fendant, by his conduct had interrupted or broken up his business.

3rd. That this proof was strictly legitimate and the plaintiff could recover
for any damage naturally or necessarily consequent upon the acts of the
defendant.

4th. That if the defendant in undertaking to make alterations or improvements
upon his own property, did so in a negligent manner, so as to damage the
plaintiff he was accountable to him for the same.

An adjacent owner of land has no right to deprive his neighbor of the natural
support afforded by his soil.

Whatever may be the extent of the right of the owner of any adjacent ground
built upon, to improve his own property, where he is under no disability
(from grant of easement, prescriptive right, or necessity) to restrict him,
although it may operate to injure his neighbor's property—such right must
be exercised with due care and skill, at his peril, to prevent injury to the ad-
jacent owner.

And if through his negligence his neighbor be injured by the breaking up of his business, he can recover damages therefor, and for the loss of profits arising from his business, to be ascertained by the jury from the evidence.

But mere conjectural profits, dependent upon future contingencies, cannot be recovered.

A prayer which instructs the jury that the plaintiff "is entitled to recover such damages, if any, as they shall find were sustained by the plaintiff, by reason of the breaking up of his business, and the loss of the profits thereof *during the residue of his term,*" is erroneous in annexing the words in italics.

Notice to one's neighbor of an intention to make a contemplated improvement of property, would seem to be a reasonable precaution in a populous city, where buildings are necessarily required to be contiguous to each other, and improvements made by one proprietor, however skilfully conducted, may be attended with disastrous results to his neighbors, who ought to have the opportunity to take the steps necessary to protect themselves and property.

Although the plaintiff's house be in a bad condition, the defendant has no right to hasten its fall by making improvements on his own lot in a careless and negligent manner.

But if the house was so weak that it could not stand the reasonable improvement of the defendant's property, conducted with skill and care, any loss sustained by the plaintiff would be *damnum absque injuria.*

Damage is also remote when, although arising out of the cause of action, it does not so immediately and necessarily flow from it, as that the offending party can be made responsible for it.

APPEAL from the Baltimore City Court.

This action was instituted in the Court below by the appellee, to recover damages for the breaking up of his business, by the acts of the appellant. The plaintiff was the lessee for a short term of years of a house and lot in the City of Baltimore, where he was conducting a restaurant and public bar, (known as the "Lexington Street Green House,") at the time of the acts complained of. The defendant was the owner of the adjoining premises and made certain improvements and excavations thereon, which it was claimed were done in a negligent and unskilful manner, causing injuries to the plaintiff's premises which resulted in the breaking up of his business.

*First Exception.*—Not passed on by the Court.

*Second Exception.*—After the testimony in the first bill of exceptions, the plaintiff further offered in evidence by himself, that he kept a restaurant at No. 211 Lexington Street, commenced on the 25th March, 1871, and closed about the 8th of January, 1875; witness was then asked the following question: "What were about the usual profits of your business prior to the commencement of digging by Shafer?" To this question the defendant objected, but the Court, (Brown, J.,) overruled the objection and permitted the question to be asked. The defendant excepted.

*Third Exception.*—After the evidence in the second bill of exceptions, the witness then answered the question, and said, that his usual profits were from $15 to $20 per day; to this answer the defendant objected, but the Court overruled the objection, and permitted the said answer to go the jury as evidence. The defendant excepted.

*Fourth Exception.*—Not passed on by the Court.

*Fifth Exception.*—After the testimony was closed the plaintiff offered the two following prayers:

1. If the jury shall find from the evidence that the defendant undertook to excavate and dig down below the foundation of the house erected on the lot occupied by the plaintiff, and in so doing, performed such excavation in a negligent and unskilful manner, whereby the building so occupied by the plaintiff, was so damaged and injured as to render the same untenantable and unfit for occupation, and for the purpose of the business of the plaintiff, in which he was engaged, and to compel the plaintiff to vacate said premises, and to remove therefrom his stock in trade, and if they find that the business of the plaintiff was broken up thereby, then the plaintiff is entitled to recover such damages, if any, as they shall find were sustained by the plaintiff by reason of the breaking up of his business, and the loss of the profits thereof during the residue of his term.

2. If the jury shall believe from the evidence in this cause that the defendant undertook to deepen the cellar of his premises, and to underpin the west wall of the house occupied by the defendant, without giving the plaintiff notice of his intention to do so, and shall further find that in consequence of such digging and underpinning, the house occupied by the plaintiff became untenantable, and unfit for occupation, and for the purpose of the business of the plaintiff in which he was engaged, and that the plaintiff was thereby compelled to vacate said premises, and to remove therefrom his stock in trade, and that the business of the plaintiff was broken up thereby, then the plaintiff is entitled to recover the damages, if any, which they may find the plaintiff sustained by reason of the breaking up of his business, and the loss of the profits thereof, during the residue of his term.

The defendant objected to the first prayer of the plaintiff:

1st. Because there was no evidence that the defendant performed the excavation in his cellar in a negligent and unskilful manner.

2nd. Because there was no evidence that the building occupied by the plaintiff was damaged and injured, so as to render the same untenantable and unfit for occupation.

3rd. Because there was no evidence of the value of the term under the lease offered in evidence.

4th. Because there was no proof of the loss by the plaintiff of any gain or profits in his business, by reason of the digging by the defendant.

The defendant objected to the second prayer of the plaintiff upon the following grounds:

1st. Because it required the jury to find that no notice was given to the plaintiff by the defendant of his intention to deepen his cellar, and to dig under his foundation wall.

2nd. Because it assumed that the business of the plaintiff was broken up by the act of the defendant.

3rd. Because it required the jury to find for the plaintiff, without requiring them to find that the defendant, in digging under his own foundation wall, did the work in a careless, negligent or unskilful manner, and did not use reasonable care in doing such work.

And the defendant offered the seven following prayers:

1. That if the jury find from the evidence that before the defendant, commenced to dig under the foundation wall of his house, adjoining to the house of the plaintiff, he verbally notified the plaintiff of his intention so to do, and shall further find, that afterwards the defendant did dig under his foundation wall, upon his own land, and underpinned the same, and in so doing, exercised reasonable care to prevent injury to the plaintiff, then the plaintiff is not entitled to recover, although the jury shall believe that the east wall of the plaintiff's house settled and cracked by reason of the excavation made by the defendant, and although they may believe that he left the house on that account.

2. That if the jury believe from the evidence, that the foundation wall of the house occupied by the plaintiff, was in a bad condition before the commencement of the digging under his, the defendant's wall, by the defendant, then the plaintiff is not entitled to recover any damage for the falling down of his foundation wall, nor any damages for the settling of the house of the plaintiff, or to his business caused by such settling, if the jury so find.

3. That if the jury shall believe from the evidence, that the wall of the house of the plaintiff was in a bad condition before the commencement of the digging by the defendant, under his own foundation wall, and that the settling and cracking thereof, were caused by its own inherent defects, and not by the digging by the defendant of his cellar in the year 1874, then the plaintiff is not entitled to recover for any injury to the possession of his property or his business, caused by such settling and cracking.

4. That no notice of his intention to dig under his own foundation wall, either in writing or otherwise, was required by law to be given to the plaintiff by the defendant, before the commencement by the defendant to dig under and underpin his said wall, and the want of such notice, if the jury find that none was given, does not entitle the plaintiff to recover in this case.

5. That there is no proof in this case that the loss of the profits of the business carried on by the plaintiff, in the house mentioned in the declaration filed in the case, was caused by the digging by the defendant upon his own ground, and is therefore too remote, and if the jury find for the plaintiff, they shall not consider the evidence in relation thereto as an element of damages in this case.

6. That there is no proof in this case that the defendant did the work of excavating and underpinning the foundation wall of his house, adjoining the east wall of the house occupied by the plaintiff, in a careless, negligent or unskilful manner, and the plaintiff is not therefore entitled to recover anything for any injury to the house upon his land, even though the jury shall believe that his house settled and cracked by reason of the excavation done by the defendant.

7. That if the jury shall believe from the evidence in this cause, that the plaintiff is the tenant of the house known as No. 211 Lexington Street, and not the owner of the said property, then he is not entitled to recover any damages for injury to the said house or ground.

The Court granted the two prayers submitted by the plaintiff, and granted the first, third and seventh prayers of the defendant by consent, but refused his second, fourth, fifth and sixth prayers.

The defendant excepted. The jury rendered a verdict for the plaintiff, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER, ALVEY and ROBINSON, J.

*Samuel Snowden,* for the appellant.

The question asked the witness, as stated in the second bill of exceptions, and the answer thereto in the third bill of exceptions, were both improper, and should not have been admitted.   The plaintiff might have made that profit for a short period of time, but it does not follow that he would have continued so to do—as an element of damage, such profits were merely speculative, depending on uncertain future contingencies, and therefore offering no ground for damages. *Cooke vs. England,* 27 *Md.,* 14; *Griffin vs. Colver,* 16 *N. Y.,* 489; *Sedgwick on Mea. of Dam., t. p.* 72.

The cellar of the defendant's house, when he *began* to dig, was eight to twelve feet below the bottom of the cellar of the house occupied by the appellee, with a stone wall three feet thick between his cellar and the wall of the cellar of the appellee ; and it is not possible that the appellant, when he commenced to dig, would have contemplated any injury to the business of the plaintiff, as the probable result of the work he was about to do, which is the rule applied to actions of *tort* as well as contract. *Abbott vs. Gatch,* 13 *Md.,* 315, 333.

The profits of the business were too remote to constitute an element of damage of the appellee at the time he commenced, as they were not the direct result of his act.   For the digging did not cause the subsidence of the floors of the building nor the loss of custom, and consequently did not affect the profits of the business.   The building is shown to have been an old one, and was cracked long before the appellant commenced to dig ; the cellar wall itself was insecure, and this wall fell of itself, without any act of the defendant.   As therefore, such injury was not in fact the direct result of the digging, the damages

are too remote, and cannot be recovered, and they come within the rule stated in *Sedgwick*, by which contingent profits are not allowed.

It is well settled that there is incident to land in its natural condition a right to support from the adjoining land, and that if the land sinks or falls away in consequence of the removal of such support, the owner is entitled to damages for any injury to his *soil* which may have been caused by such removal, whether the party removing such support be guilty of negligence or not. *Dodd vs. Holme*, 1 *Adol. & Ellis*, 493 ; *Wyatt vs. Harrison*, 3 *Barn. & Ad.*, 871 ; *McGuire vs. Grant*, 1 *Dutch.*, 356, 368 ; *Foley vs. Wyeth*, 2 *Allen*, 131, 133 ; *Charles vs. Rankin*, 22 *Mo.*, 566, 571 ; *Farrand vs. Marshall*, 21 *Barb.*, 419 ; *Law of Nuisances, sec.* 173, &c.

But this rule is limited to the land itself, and does not apply to buildings thereon.    For any injury to these, caused by an excavation on the adjoining land, an action can only be maintained when want of due care or skill, or positive negligence, have contributed to produce it, which must be proved by the plaintiff.    *Partridge vs. Scott*, 3 *M. & W.*, 220 ; *Walters vs. Pfiel, Moody & Malk.*, 362 ; *Thurston vs. Hancock*, 12 *Mass.*, 220 ; *Clark vs. Foot*, 8 *Johns.*, 421 ; *Panton vs. Holland*, 17 *Johns.*, 100 ; *LaSala vs. Holbrook*, 4 *Paige*, 169.

The whole doctrine which has been founded upon the dicta in Rolle, has, however, been denied in its application to towns, &c., by Bronson, J., in *Radcliff's Ex'rs vs. Mayor, &c., of Brooklyn*, 4 *N. Y.*, 252.

In this case, therefore, even if the plaintiff had been entitled to recover for injury to the buildings which the Court instructed the jury he was not entitled to, it would have been necessary for him to show by proper evidence the want of care, or skill, or *positive negligence* on the part of the appellant in digging upon his own ground, before he could have been entitled to recover.    It clearly was not

sufficient to show that the damages might have arisen from the act of the appellant. *Vaughan vs. Menlove*, 3 *Bing., N. C.*, 468.

The plaintiff was only entitled to recover as damages such a sum as would compensate him for the injury actually sustained by him. *Thayer vs. Brooks*, 17 *Ohio*, 492; *Troy vs. Ch. R. R. Co.*, 3 *Foster,* 83; *Cooke vs. England*, 27 *Md.*, 14.

And if he were entitled to recover for loss of profits, it could only be during the time reasonably sufficient to enable him to repair the injury to his property. *Brown and Otto vs. Werner*, 40 *Md.*, 15; *Ludlow vs. Yonkers*, 43 *Barb.*, 493; *Law of Nuisances, sec.* 860.

Both the instructions granted by the Court for the plaintiff, told the jury that the recovery was for loss of profits *during the residue of the term.* So that, although the injury done to the appellee might have been ever so small by the direct act of the appellant, yet he was not to repair his property and go ahead with his business, but might sit still during the balance of the term of his lease, and without the investment of any capital he might collect from the appellant the profits which he might have made by conducting his business, ascertained by his *opinion* of what he was doing when the appellant commenced to dig. The lease was dated 23rd January, 1867, for the term of ten years, and had therefore nearly two years to run from the time of trial—during the whole of which time, the jury were instructed they could allow him for loss of profits—thus carrying the recovery far beyond the time allowed by law, which fixes the recovery at the date of the commencement of the suit.

*Edward Israel* and *R. R. Battee*, for the appellee.

The admissibility of the question and the answer thereto, to which the appellant's second and third exceptions were taken, has been already decided by this Court. *Brown & Otto vs. Werner*, 40 *Md.*, 16, 21.

The Court was right in granting the plaintiff's first prayer, and in overruling the special objections filed by the appellant, because there was evidence that the defendant performed the excavation in his cellar in a negligent and unskilful manner, and that the building occupied by the plaintiff was so damaged and injured as to render the same untenantable and unfit for occupation, and for the purposes of his business, and for the further reason that the value of the term does not constitute an element of damage in the plaintiff's first prayer as assumed by the appellant in his third special objection to this prayer, the damages claimed in such prayer being the result of the loss sustained by the appellee in consequence of the appellant's want of skill, and causing the breaking up of his business and the loss of the profits thereof during the residue of the term without regard to the value thereof. *McHenry vs. Marr and Emmart*, 39 *Md.*, 510, 525; *Brown and Otto vs. Werner*, 40 *Md.*, 15; *Cooke vs. England*, 27 *Md.*, 14, 34.

The Court properly granted the plaintiff's second prayer, and was right in rejecting the first special objection of the appellant to said prayer because notice was necessary from the defendant to the plaintiff before the defendant commenced to dig or excavate. 3 *Kent's Comm.*, 555, 556, 557, *top paging, and* 437 *marg.*, (11*th Ed.*;) *Sutton vs. Clarke*, 6 *Taunt.*, 29, 44.

The appellant's second special exception to this prayer is erroneous because it alleges that the prayer *assumes* that the business of the plaintiff was broken up by the act of the defendant. On the contrary, the prayer incorporates the question of injury to, and breaking up of, the plaintiff's business by reason of digging and underpinning, without notice, as a question of fact to be determined by the jury.

The third and last special objection to the plaintiff's second prayer is not valid or tenable, because the defen-

dant has no right to excavate or dig down adjacent to the
property of the plaintiff, without first giving him notice of
his intention so to do; notwithstanding he may not have
done so carelessly, negligently or unskilfully, and may
have used reasonable care in doing such work.   3 *Kent,*
555, 556, 557, *top paging,* (11*th  Ed. ;*)  *Scott vs. Bay,* 3
*Md.,* 431, 432, 445 *and* 446;  *Dodd vs. Holme,* 1 *Adol. &
Ellis,* 493.

The defendant's second prayer is erroneous, because,
even if the plaintiff's wall was in a bad condition the
defendant had no right to dig down and excavate along-
side of it in such a manner as to cause it to fall down, or
in any manner thereby to cause damage to the plaintiff or
his business and plead as an excuse therefor the bad con-
dition of the plaintiff's wall.

STEWART, J., delivered the opinion of the Court.

No point was made in the appellant's brief, as to the
admissibility of the articles of agreement between Wilson
and Bond, referred to in the first exception.

The question is immaterial to the determination of the
issues involved, and it is unnecessary further to advert
to it.

The City Court committed no error in its ruling in the
second and third exceptions, on the question proposed to
the plaintiff, "as to the usual profits of his business prior
to the commencement of the digging by Shafer," and the
answer of the witness thereto, "that they were from $15
to $20 per day."

The plaintiff claimed damage for the breaking up of his
business by the acts of the defendant, and to enable the
jury to form an estimate of his damage, it was necessary
to show the actual extent of his usual profits before the
defendant by his conduct had interrupted or broken up his
business.

This proof was strictly legitimate, and the plaintiff could recover for any damage naturally and necessarily consequent upon the acts of the defendant. *Brown & Otto vs. Werner*, 40 *Md.*, 15.

This is not in conflict with the rule excluding evidence as to the estimate of future profits ; which, in its nature, must be founded on speculation or mere conjecture.

The question and answer in the fourth exception were immaterial, and it is not necessary to review the action of the City Court thereon.

The fifth exception is to the granting of the plaintiff's first and second prayers, and the rejection of the defendant's second, fourth, fifth and sixth prayers.

Assuming there was evidence of the facts recited in the first prayer of the plaintiff, to be considered by the jury, and that the prayer was not liable to the special objections made thereto by the defendant's counsel, and that the defendant had the right to change or improve his property according to his own judgment or fancy ; the Court was not required to decide as to his liability, at all events, for the consequences of his acts ; but the prayer merely presented the question as to the negligence of the defendant, in the acts complained of, resulting in damage to the plaintiff, for which he could recover.

The prayer, to this extent, asserts a clear proposition.

If the defendant, in undertaking to make alterations or improvements upon his property, did so in a negligent manner, so as to damage the plaintiff, he was accountable to him for the same.

There seems no doubt that an adjacent owner of land has no right to deprive his neighbor of the natural support afforded by his soil.

The authorities are somewhat conflicting, as to the extent of the right of the owner of any adjacent ground, built upon, to improve his own property, where he is under no disability (from grant of easement, prescriptive right or

necessity) to restrict him, although it may operate to injure his neighbor's property. But it is agreed on all sides, that his right, whatever that may be, must be exercised with due care and skill, at his peril, to prevent injury to the adjacent owner.

If his neighbor be injured through his negligenc, he can recover for the damage sustained. See *Washburn on Eas.*, 437; *Gale's Law of Eas.*, 365. An interesting review of the subject may be found in *Amer. Law Review*, 1 to 22.

This portion of the prayer is sound, and the plaintiff was entitled to recover damages for the breaking up of his business and the loss of the profits arising therefrom, to be ascertained by the jury, from the evidence—this would seem to be the reasonable extent of his claim; but estimated future profits, dependent upon contingency, "during the residue of his term," extending through a period of nearly two years, could not be included—they were merely conjectural.

It would be a hard rule, to hold the defendant answerable for profits which might never have been realized by the plaintiff. Upon such a principle, the defendant would, in truth, be held to insure the plaintiff's profits *throughout his term*, without effort on his part to do anything to mitigate his loss—such a theory of assessing damages, is neither sound in law nor morals.

There has been much difficulty in establishing a just and inflexible rule, to be applied in all cases to the ascertainment of damages; but it is settled, that mere conjectural or speculative damages, depending upon future contingency, cannot be recovered. *Middlekauf vs. Smith*, 1 *Md.*, 341; *Abbott vs. Gatch*, 13 *Md.*, 315; *Cooke vs. England*, 27 *Md.*, 14.

It is also established, that damages may be recovered for any and all injury sustained, including the breaking up of his business and the loss of profits naturally following,

to be determined by the jury, from the evidence in relation thereto. *Brown & Otto vs. Werner*, 40 *Md.*, 16.

The Scotch law, referred to in *Mayne on Damages*, 18 *and* 59, allowing loss of estimated profits to be included in the damages, has not been recognized as part of the common law, and depends upon too many contingencies to justify its adoption as a safe basis of damages.

· This prayer was erroneous in annexing the concluding words, "during the residue of his term."

The second prayer of the plaintiff claims that it was the duty of the defendant to have given him notice of his intention to make the contemplated improvement.

Such notice would seem to be a reasonable precaution in a populous city, where buildings are necessarily required to be contiguous to each other, and improvements made by one proprietor, however skilfully conducted, may be attended with accidental and disastrous results to his neighbors, who ought to have the opportunity to take the steps necessary to protect themselves and property.

This was recognized as a sound principle, in the case of *LaSala vs. Holbrook*, 4 *Paige's Ch. R.*, 169, referring to English cases, deciding that the party who is about to endanger the buildings of his neighbor by a reasonable improvement on his land, is bound to give the owner of the adjacent lot proper notice thereof, and to use ordinary skill in conducting the same, and that it is the duty of the latter to shore or prop up his own building so as to render it secure in the meantime.

This also seems to have been the view of Chancellor KENT.

In his 3*rd vol. Com.*, that distinguished jurist says, In cities, where the population is dense and the buildings are compact, a great variety of urban services grow out of the relation of vicinage, and at page 532 he states, If the owner of a house in a compact town, finds it necessary to pull it down, and remove the foundations, and he gives due

notice of his intention to the owner of the adjacent house, he is not answerable for the injury which the owner of that house may sustain by the operation, provided he remove his own with reasonable and ordinary care.

In *Washburn on Easements*, 435, the same precaution is referred to and the *English Cases* sustaining it.

There was similar error in granting the plaintiff's second prayer in regard to the measure of damages, as stated in disposing of his first prayer.

The second prayer of the defendant was properly refused. If the plaintiff's house was in bad condition, that did not justify the defendant in throwing it down, or otherwise injuring it, and destroying the plaintiff's business therein. The defendant had no right to hasten its fall by making improvements in his own lot in a careless and negligent manner. *Gale on Easements*, 353.

If the house was so weak that it could not stand the reasonable improvement of the defendant's property, conducted with skill and care, any loss sustained by the plaintiff would be *damnum absque injuria.* This was conceded by the allowance of the defendant's third prayer.

The necessity of notice to the plaintiff of the projected improvement, has already been stated, and there was no error in the refusal of the defendant's fourth prayer, claiming that notice was unnecessary.

There was no error in the refusal of the defendant's fifth prayer, for the reasons already stated.

Damage is only remote when, although arising out of the cause of action, it does not so immediately and necessarily flow from it, as that the offending party can be made responsible for it. *Mayne on Dam.*, 36.

The defendant's sixth prayer was properly refused.

The jury had to determine from the evidence whether the defendant excavated the foundation wall of his house in a negligent and unskilful manner, and if they so found, the plaintiff was entitled to recover for the damage he suf-

fered thereby.   There was evidence upon the subject, and it was the province of the jury to determine as to its weight and effect, and to say whether or not, under the circumstances, the defendant conducted his work with such a degree of care and caution as might be looked for in a prudent man.

*Judgment reversed, and*
*new trial ordered.*

(Decided 7th March, 1876.)