HELENA SCHULTZ AND VALENTINE SCHULTZ, PLAINTIFFS IN ERROR, v. JOHN S. BYERS, DEFENDANT IN ERROR.

Excavation by an owner on his own land, adjoining another's building, causing damage, without his knowledge or previous notice to him, is evidence of want of care in doing the work.

On error to the Hudson County Circuit Court.

The plaintiffs, Helena Schultz and Valentine Schultz, were the owners of a lot of land in Bayonne, Hudson county, upon which there was a building erected on brick piers set from three feet to three feet and a half in the ground. The defendant, who owned the adjoining land, excavated to the depth of seven feet within three or four inches of the plaintiffs' building, and erected a house thereon. The excavation by the defendant, within the line of his own land, caused the building of the plaintiffs to sink, and it was weakened, cracked and injured.

There was judgment of non-suit, and exceptions, on which errors are assigned.

For the plaintiffs, *W. W. Anderson.*

For the defendant, *De Witt Van Buskirk.*

The opinion of the court was delivered by

SCUDDER, J. The declaration is framed on the idea that the plaintiffs' land, dwelling house and building were entitled to support by the adjacent land of the defendant, and that by wrongfully digging away and removing such support the damage complained of was caused, whereby a right of action accrued. A demurrer was filed to this declaration, but it appears to have been waived, and the cause was tried on a plea of the general issue, and proofs. With this form of pleading, leaving the declaration unaltered, there is difficulty in holding the case in court to determine the exact cause of

controversy between these parties. But as the court at the circuit heard and decided the cause as if the pleadings were amended to present the issue, and the question is important, it will be considered as it was there tried and decided.

It is almost unnecessary to say that the juxtaposition of lands gives no right of support to buildings erected thereon, unless conferred by grant, conveyance or statute. As this is a case of recent erection of the building alleged to have been injured, the question of prescription, or lapse of time sufficient to infer a grant or conveyance, does not arise, nor has such right ever been conceded in our courts. The principle of the lateral support of lands and buildings was settled in this state by the case of *McGuire* v. *Grant*, 1 *Dutcher* 356 (1856). As to land in its natural condition there is a right to such support from the adjoining land; as to buildings on or near the boundary line, injured by excavating on the adjoining land, there is no right of action, in the absence of improper motive, or of carelessness in the execution of the work. This is the law as established by the cases prior to that decision; it has remained the unquestioned law in this state since that time, and it has been confirmed by many cases since in other courts. Some of the most recent are very valuable for reference, notably *Gilmore* v. *Driscoll*, 122 *Mass.* 199; *Angus* v. *Dalton*, 6 *Ch. App. Cas.* 740, *L. R.* (3 *Q. B. Div.*) 85, where a most thorough examination of the subject will be found.

Although this law seems to give the owner of a building put upon his own land in a manner most advantageous and sometimes necessary to make it available for his use, especially in a closely built city, but little protection against the choice or caprice of another who may own the adjoining lands, yet it will be observed he is not entirely without protection. Neither can say, " It is lawful for me to do what I will with my own," as has been sometimes loosely stated in discussing this subject, and that it is a man's folly to build near the dividing line between his land and that of his neighbor, for it is more frequently his necessity that compels him to do so.

The rights of the parties are equal, and are subject to modifi-cation by the conflicting right of each other.

Our statute relating to party walls (*Rev., p.* 809) shows that in some cases it has been thought necessary to fix authori-tatively the mutual concessions and limitations in the rights of adjoining land owners. This statute only applies where the excavation is more than eight feet in depth, while in this case the digging is but seven feet deep, but it is a recognition of the reciprocal right and duty which sometimes grow out of the mere vicinage of property. The maxim *sic utere tuo ut alienum non laedas* is often invoked in such cases, and is of very wide application. In this case the limitation of this principle is, that if the owner of adjoining land would dig down beside the foundation of his neighbor's house, he must exercise his right to do so not carelessly, but cautiously. There was no proof, or offer to prove, at the trial, that the defendant was negligent in digging his cellar, whereby the plaintiffs' house was caused to settle and the walls to crack, beyond the mere fact that this was the result. This result alone was not sufficient, for it may have been caused by defects in the plaintiffs' house. The special ground of com-plaint is, that it was done without the knowledge of the plaintiffs, and without notice to them, by which they might have been enabled to protect their property. It is argued that the defendant thereby took upon himself the whole risk of injury to the building. The question whether such omission to give notice, under the circumstances stated, is evidence of carelessness in the execution of the work is an important one, and it cannot be said to be definitely settled. The case most frequently cited in this country in favor of requiring such no-tice is *Lasala* v. *Holbrook*, 4 *Paige* 169, 173 (1833). In this case Chancellor Walworth, while affirming the right of the owner of adjacent land to excavate for improvement on his own land, using ordinary care and skill, without incurring damages for injury to a building supported thereby, says: " From the recent English decisions it appears that the party who is about to endanger the building of his neighbor by a

reasonable improvement on his own land, is bound to give the owner of the adjacent lot proper notice of the intended improvement, and to use ordinary skill in conducting the same." He cites *Peyton* v. *Mayor of London*, 9 *Barn. & C.* 725; *S. C.*, 4 *Man. & R.* 625; *Walters* v. *Pfeil*, 1 *Moo. & M.* 362; *Massey* v. *Goyner*, 4 *Car. & P.* 161.

In Peyton v. Mayor of London it was held that the plaintiff could not recover, because the defendant had not given notice of his intention to pull down his supporting house, that not being alleged in the declaration as a cause of the injury. Lord Tenterden says, because of the failure to allege want of notice, the action cannot be maintained upon the want of such notice, supposing that, as a matter of law, the defendants were bound to give notice beforehand, upon which point of law we are not in this case called to give any opinion. In Massey v. Goyner, where notice was given to the occupier of adjoining premises of an intention to pull down and remove the foundation of a building, it was held he was only bound to use reasonable and ordinary care in the work, and not to secure the adjoining premises from injury.

In *Chadwick* v. *Trower*, 6 *Bing. N. C.* 1; *S. C.*, 8 *Scott* 1 (1839), it was decided, in the Exchequer Chamber, that the mere circumstance of juxtaposition does not render it necessary for a person who pulls down a wall to give notice of his intention to the owner of an adjoining wall. This case was first considered in 3 *Bing. N. C.* 334, and cited in 2 *Scott N. R.* 74 and 5 *Id.* 119. In the argument, when it was urged that if it be a duty imposed on a party not to do work so incautiously as to injure his neighbor's rights, and it is clearly a want of proper caution to omit giving such notice as may enable the neighbor to take steps for his own security, Parke, B., replied: " The duty of giving notice in such cases seems to be one of those duties of imperfect obligation which are not enforced by the law." But if it be a duty affecting property rights, and the breach causes damage, it would seem that the law must afford a remedy.

In *Brown* v. *Windsor*, 1 *Cromp. & J.* 20, Garrow, B., said : " There may be cases where a man altering his own premises cannot support his neighbor's, and the support, if necessary, must be supplied elsewhere. In such case he must give notice, and then, if an injury occur, it would not be occasioned by the party pulling down, but by the other party neglecting to take due precaution."

There are no later cases, that I have found, in the English courts, which change the rule given in Chadwick *v.* Trower,. and that is therefore supposed to be the present law in England relating to this subject, though the cases above cited refer to support by adjoining buildings.

There are very few cases in our country which bear directly on this point. *Shafer* v. *Wilson*, 44 *Md.* 268, is most frequently referred to, after *Lasala v.* Holbrook, above cited. It is there said, that notice to one's neighbor of an intention to make a contemplated improvement of property would seem to be a reasonable precaution in a populous city, where buildings are necessarily required to be contiguous to each other, and improvements made by one proprietor, however skillfully conducted, may be attended with disastrous results to his neighbors, who ought to have the opportunity to protect themselves and property. To the like effect is *Beard* v. *Murphy*, 37 *Vt.* 101.

Chancellor Kent, 3 *Com.* 437, has quoted the case of Lasala *v.* Holbrook, and this has been referred to in Shafer *v.* Wilson, and elsewhere. *Washb. Easem.* 434, 435 ; *Shearm. & R. Negl.* 497 ; 1 *Thomp. Negl.* 276, and other text books, cite these cases, and from such quotations it is impossible to determine how far the requirement of notice has passed into the general law of the courts in this country.

None of these cases are of binding authority in this court, and in a case of doubt, like this, we should seek for that result which is most reasonable and just. Where the danger of loss in doing a legal act is not equally balanced, we should lean to that side which most needs protection. Here a mere notice, which can cause but little trouble to one who is hon-

estly exercising his right of excavating his land next to his neighbor's house, may enable the receiver of notice to shore or prop his walls to prevent its falling, or it may lead to some arrangement by which neither will be injured. It is more than a mere neighborly courtesy to give such notice, because it involves the right of one man to assert his right, regardless of the injury he may cause to his neighbor without such warning. The manner of giving notice may be only such as is reasonable under the circumstances, either to the owner of the property, or, if there be difficulty in finding or serving it on him, then it may be given to the tenant or occupant who is interested in protecting the property. Where it can be shown that such owner had knowledge of the improvement that was about to be made, it would not be necessary to prove a formal notice given to him.

In this view of the case, there was error in rejecting the evidence which was offered to show that the defendant gave no notice to the plaintiffs of his intention to excavate the land adjoining the house of the plaintiffs, and the judgment will be reversed.

MAGIE, J. (dissenting). The question in this case is, whether the owner of an urban lot, who, in excavating its soil for a lawful purpose and in a manner not in itself negligent, has caused to settle a building erected on the adjoining lot and deriving support from such soil without having acquired any right to such support, is liable to an action for the injury, merely because he had given no previous notice to the owner of the building of the intended excavation.

The solution of the question is of great importance, and, as I have the misfortune to differ from the majority of the court, I deem it my duty to give my reasons for my dissent.

From a very early period judicial consideration has been given to the right of support to soil in its natural state, and to artificial structures erected thereon, by the soil of adjacent or subjacent lands. A complete review of the course of decisions in England can be found in the opinions of Baron

Pollock in *Dalton* v. *Angus*, 6 *App. Cas.* 740, and of Chief Justice Gray in *Gilmore* v. *Driscoll*, 122 *Mass.* 199.

It is thereby thoroughly settled as the law of Great Britain, that the undisturbed maintenance, by an owner, of a building erected on the confines of his land and supported by the soil of adjacent lands, for a period requisite to make title by adverse possession, will establish in such owner a right to that support. While there are conflicting views as to the legal source and character of the right (*Dalton* v. *Angus, supra*), all agree that, once acquired, the right cannot be invaded by removal of the supporting soil, without liability for the resulting damage.

Whether this doctrine is obligatory upon us or has been adopted in this country may, perhaps, be open to question. The analogous doctrine respecting the acquisition of rights by "ancient lights" has been doubted and denied. *Hayden* v. *Dutcher*, 4 *Stew. Eq.* 217. But it is unnecessary to express any opinion on the subject; for in the case in hand plaintiff had not, by length of maintenance of his house, acquired any right of lateral support, if he could have done so.

But it is settled by the general concurrence of courts administering the common law, that when a building on the land of its owner derives actual support from the soil of adjacent land of another owner, but has acquired no right to such support, that the latter owner may, for any lawful purpose, excavate and remove his supporting soil without any liability for injury occasioned thereby to the building, provided he does not act wantonly or without the exercise of due care and prudence.

In the case before us the excavation was for a lawful purpose, and liability for the injury occasioned will only attach to the owner if his act in excavating was, in the eye of the law, negligent.

Negligence is the want of that care which, under the circumstances, is due. As the only negligent act charged is the lack of notice, the question before us resolves itself into this, viz., whether it was defendant's duty to give notice of his ex-

.cavation to plaintiffs. If so, a breach of that duty would constitute negligence.

No such duty has been attempted to be imposed by statute. The "Act to regulate party walls" is not applicable.

The contention is, that the duty arose out of the juxtaposition of the lands and the application of the maxim *sic utere tuo ut alienum non laedas.*

But it must be remembered that the conflicting interests of the parties arose not from the mere juxtaposition of their lands, but from the erection of a building by one owner, supported by the soil of the other owner, without having acquired a right to such support. In making such erection the owner of the building must be deemed to have full knowledge that the supporting soil can be lawfully removed.

Can his act restrict the right of the other owner to remove the soil, and impose on the latter the duty of giving notice of what, it is admitted, he may lawfully do.

If the act is an actionable wrong, or if the maintenance of the building will, by lapse of time, ripen into an indefeasible right, it seems to border on the absurd to say that the owner of the land injured, or threatened with injury, may not interrupt the running of the claim by removing the support improperly claimed, without the necessity of giving previous notice to him who is attempting to burden the land by such an easement or right.

But if the act is neither actionable nor capable by continuance of creating an easement of support or rights of that nature, yet, as to the adjoining owner, it is without authority, and it is unreasonable, in my judgment, to permit such an act, knowingly done, to impose on adjoining owner positive obligations restrictive of his rights. He who knowingly burdens the soil of another with the support of his building without right, must in reason be deemed to take the risk of the owner removing the supporting soil, and to be prepared to protect his interest by his own vigilance. He cannot, by such act, impose on his neighbor the duty of being vigilant for him.

The maxim *sic utere tuo* forbids the exercise of one's rights so as to injure the rights of others. But the removal of supporting soil under the supposed circumstances injured no right, for none had been acquired.

The maxim no doubt forbids the negligent use of one's rights to the injury of the rights of others. This negative obligation is, in my judgment, the bound of the duty imposed in the case before us. The owner, in excavating, as he has a right to do, is under a duty to do the work with care and prudence, so as to do no unnecessary injury to the right of the owner of the building in its support on his own land. A failure to perform this duty will be negligence, but negligence cannot be predicated of a failure to give notice, for such a duty is not laid upon him.

The argument in behalf of plaintiff seems to me to confound the rules of neighborly courtesy with the rules of law. Politeness to a neighbor might dictate the giving of notice to him in many instances where the law would not require any. What we settle in this case is a rule of law to govern an owner of land in the use of his undoubted rights therein.

But it is said that the doctrine contended for is established by authority.

Among the many litigated cases on the subject of lateral support, which engaged the English courts before the separation of this country, none have been discovered in which this doctrine has been even hinted at.

In 1833 Chancellor Walworth, in dealing with a case not involving this question, made this statement, viz. : " From the recent English decisions, it appears that the party who is about to endanger the building of a neighbor by a reasonable improvement on his own land, is bound to give the owner of the adjacent lot proper notice of the intended improvement." *Lasala* v. *Holbrook,* 4 *Paige* 169. To support this statement he cites *Peyton* v. *Mayor, &c.,* 9 *Barn. & C.* 725 ; *Walters* v. *Pfeil, 1 Man. & M.* 362, and *Massey* v. *Goyder,* 4 *Car. & P.* 161. All these cases were decided in 1829.

I think it can be shown that this statement of Chancellor Walworth is the sole basis of the claim that the doctrine contended for is established by authority.

The independent opinion of that eminent jurist would go far to establish the doctrine, but, as has been seen, no opinion was called for, and none was expressed by him.

Moreover, the cases referred to do not support his statement.

In Peyton *v.* Mayor, &c., Lord Tenterden, after adverting to the fact that the declaration did not charge a want of notice of taking down the house whereby the alleged injury was caused, added : " Therefore, in our opinion, the action cannot be maintained upon the want of such notice, supposing that, as matter of law, the defendants were bound to give notice beforehand —upon which point of law we are not in this case called upon to give any opinion."

In Walters *v.* Pfeil the question of the obligation to give notice was not raised or mentioned.

Massey *v.* Goyner is the report of a trial before Chief Justice Tindal. By one count defendant was charged with excavating on his own land to the injury of plaintiff's building, without giving previous notice; by another count he was charged with negligently excavating. The question of notice was left to the jury, who found notice had been given, but upon a general finding judgment was entered on the last count.

It is plain that none of these cases justified the statement in Lasala *v.* Holbrook.

The precise question was afterwards raised. One of the counts of a declaration for injury done to a building by removal of its support on adjacent land, was founded on a lack of notice. Tindal, C. J., in dealing with the case on demurrer, said : "As to the allegation that it was the duty of defendant to give notice to plaintiff of his intention to pull down his wall, * * * it is objected, and, we think, with considerable weight, that no such obligation results, as an inference of law, from the mere circumstances of the juxtaposition of

the walls of defendant and plaintiff." *Trower* v. *Chadwick,*. 3 *Bing. N. C.* 334.

That cause was thereafter tried before the same Chief Justice. One of the issues was on the above mentioned count. Damages were awarded generally. On writ of error, the Exchequer Chamber reversed the judgment. Baron Parke, delivering the unanimous judgment of the court, quoted the language of Chief Justice Tindal above set out, and added: " We also think it impossible to say that, under such circumstances, the law imposes upon a party any duty to give his neighbor notice. We are inclined to think that the second count of the declaration has made the breach of this supposed duty a substantial ground for damage, and the probability is that the main damage did result from the want of notice, for it is obvious that if notice had been given the plaintiffs might have taken precautions to strengthen their vault. Inasmuch therefore as the damages are given generally upon the whole declaration, we think that the judgment must be arrested and a *venire de novo* awarded." *Chadwick* v. *Trower,* 6 *Bing. N. C.* 1 (1839).

Notwithstanding this unmistakable deliverance, the statement of Chancellor Walworth commenced and has continued to be cited as expressing the conclusions of English courts on this subject.

In the edition of the third volume of *Kent's Commentaries,*. which was published in 1840, it is stated that " if the owner of a house in a compact town finds it necessary to pull it down and remove the foundation of his building, and he gives due notice of his intention to the owner of the adjoining house, he is not answerable for the injury which the owner of that house may sustain by the operation, provided he remove his own with reasonable and ordinary care." This statement was not made in the first edition of that volume, which was published in 1828. From that fact, and from the note to the passage above quoted, it is plain that it was based upon Lasala v. Holbrook and the English cases of 1829. The case of Chadwick v. Trower was not alluded to.

After the decision of Trower *v.* Chadwick, Gale & Whatley, in their treatise on *Easements,* discussed the question of the duty to give notice, now contended for, and declared their opinion that if the observations of Chief Justice Tindal in that case were well founded, no such duty was imposed by law. Those observations were, as we have seen, adopted and approved by the Exchequer Chamber.

Subsequent authors in this country have expressed views in respect to the duty to give notice such as have been contended for, but they refer for English authority only to the cases of 1829, on which the statement in Lasala *v.* Holbrook had been based. The case of Chadwick *v.* Trower is not mentioned.

They also refer to American cases as authority for the doctrine. I have not been able to find among them a single case justifying the statement. The cases generally cited are *Shrieve v. Stokes,* 8 *B. Mon.* 453 ; *Winn* v. *Abeles,* 35 *Kan.* 85, and *Shafer* v. *Wilson,* 44 *Md.* 268.

In Shrieve *v.* Stokes the question of the obligation to give notice was not raised by the pleadings or the evidence. What was said by the court on the subject was incidental, and based on the supposed authority of the English cases of 1829.

In Winn *v.* Abeles the question of duty to give notice was not involved.

In Shafer *v.* Wilson the question of liability for want of notice was raised. The court below instructed the jury that notice was a duty. In reviewing this instruction the court above only says that such notice would seem to be a reasonable precaution, and base this statement on Lasala *v.* Holbrook.

This review, in my judgment, justifies the assertion that the doctrine contended for has not the sanction of authority. In the only adjudicated case not based on mistaken citations, the determination was against the doctrine, and although the decision does not bind us, it must have great weight as a declaration of the obligations imposed by the common law on adjoining property owners by a court of eminent ability.

Having found no support for the contention of plaintiffs, either in principal or authority, I am unwilling to join in imposing this burden on property owners.

I have devoted much consideration to this case, from the sincere conviction that the rule to be promulgated will disastrously affect urban property, and without producing any practical good.

A judicial determination that notice is necessary in cases such as that before us, cannot prescribe the form of notice, or fix the time, or provide for constructive notice. Our determination will simply require reasonable notice, and whether, in any case, such notice has been given must be matter for the jury.

An owner hereafter proposing to improve property so situated must give notice. Must the notice be in writing, or will verbal notice or knowledge suffice? How shall notice be given to the owner of the building if he be an infant, or *non compos mentis*, or non-resident? Such and other similar questions the owner, when confronted by the rule to-day promulgated, must determine according to his own view of what is reasonable, but conscious that a jury may disagree with his view and hold him liable. If the owner of the building be infant, idiot or beyond seas, it would seem to be impossible to give the required notice. To add to the difficulties and risks which have before attended the putting down a suitable foundation for building in such cases, the difficulty of giving notice, and the risk of its being ineffective, will retard the improvement of such property, and diminish its value.

I shall vote to affirm the judgment below.


*For affirmance*—MAGIE, REED.   2.


*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, SMITH, WHITAKER.   8.