131    89
143    301
144    565

MINNIE POHLMAN, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL COMPANY, Appellee.

**Drainage of surface water:** ACCELERATED FLOW: DAMAGES. The owner of a servient estate may construct drains upon his own land so as to accelerate the flow, over the same, of the surface water which he is compelled to receive from the dominant estate, and he cannot be compelled to respond in damages to the owner of the dominant estate, although by so doing the dominant estate is injured through an increased washing of the soil.

*Appeal from Allamakee District Court.*— HON. L. E. FELLOWS, Judge.

TUESDAY, JUNE 12, 1906.

ACTION to recover damages to real estate. A demurrer to the petition was sustained. Plaintiff refusing to plead over, there was judgment against her for costs, and she appeals.— *Affirmed.*

*J. P. Conway* and *D. D. Murphy,* for appellant.

*J. C. Cook, M. B. Hendrick,* and *H. Loomis* for appellee.

BISHOP, J.— Plaintiff is the owner of an eighty-acre tract of land in Allamakee county, situated not far distant from the west bank of the Mississippi river. The general slope of the tract, and as well of the lands to the north and west thereof, is to the south and southeast, toward the river, and the surface water collecting on all such lands flows naturally in accordance with such slope. Extending entirely across plaintiff's land from west to east, and near the south line thereof, is a ravine or hollow, known as "Poole Hollow," and into this the surface water naturally drains from the lands lying to the south and west, as well as from plaintiff's land on the north. The opening from Poole hollow is near the southeast corner of plaintiff's land. The right of way of the defendant company does not touch plaintiff's land, but is distant a few rods from the southeast corner thereof, and extends in a northeasterly and southwesterly direction. Before the matters herein complained of, the surface water collecting in Poole hollow as it came out of the opening spread out and in the main passed off over the line of plaintiff's land, and upon reaching defendant's right of way, crossed the same under a track bridge; from thence it again spread out and flowed to the east and south over the lands of one Weymiller, finally reaching a bayou of the river known as "Poole Slough." It is alleged in the petition that some time before the commencement of this action, there was constructed by the defendant company a ditch extending from its right of way at the bridge referred to, due east across the lands of Weymiller and connecting directly with said Poole slough. And it is the complaint of plaintiff that the purpose of said ditch, and the effect thereof, has been to conduct the waters collecting in and flowing out from Poole hollow and from the swales into which the same formerly and naturally flowed, and to conduct such waters down

the course of said ditch, and thence to said slough and to the river; that owing to the pitch or decline of said ditch the waters are taken away with greater force and velocity than when the same flowed naturally as before, and that this has resulted in causing "a deep and wide ditch to be washed out and extended back entirely across plaintiff's said land a little to the north of the south end thereof, which said ditch divides plaintiff's farm into unequal parts, leaving a small quantity on the south side, and a large portion on the north side; that said ditch is being constantly worn out and increased in depth and width by the surface waters from every heavy rain, and by the melting of snows in the spring, and plaintiff's said farm is thereby caused to be cut up with ditches by reason of the surface waters flowing with greater force and rapidity in the said ditch constructed by defendant in which all of the surface waters which come down are carried in a direct line to said slough; that said ditch would not have been washed in plaintiff's land had not defendant constructed said ditch as aforesaid." The demurrer proceeds upon the theory that in disposing of surface water a lower proprietor owes no duty to an upper proprietor save to refrain from obstructing the flow thereof, and that he cannot be made liable for damages in character and occasioned as in the petition here complained of.

It is to be observed that the ditch in question, as located, is entirely upon the lands of Weymiller, and we may assume that he, at least, consented to the construction thereof. To all intents and purposes, therefore, the case stands as though the work had been done by him. First in order, it is a contention of counsel for appellant that the hastening of the flow of the water caused by the ditch in question, and having for its result the injury complained of, was violative of the surface water rights of plaintiff as the owner of the dominant estate. We do not see how this contention can be sustained, and we arrive at this conclusion apart from any consideration of a statute of this state,

particular reference to which will be made in the further course of this opinion. By the settled rule of our cases, Weymiller, as the owner of the servient estate, was undoubtedly required to receive all the waters naturally flowing from the higher ground lying to the north and west, and coming down through the opening from Poole hollow, thence crossing defendant's right of way. *Livingston v. McDonald,* 21 Iowa, 160; *Dorr v. Simerson,* 73 Iowa, 89. The burden thus imposed arises wholly by operation of law, and is in the nature of a servitude cast upon the lower estate in favor of the upper proprietor. And the rule which declares for the existence of such servitude is born out of necessity. This must be so because otherwise there could be no justification for it. It is fundamental that the law will not sanction the raising up of a condition which, as between adjoining owners, at once confers a right upon the one, and casts a burden upon the other, except upon the ground of necessity. As water must flow in the very nature of things, the rule is based upon an observance of that necessity which inheres in the operation of the natural law. The burden must rest somewhere and in the natural situation of the lands and the necessity for affording an escape for the flow of water is to be found the reason for the rule which declares that the lower proprietor may not in justice refuse to accept it. Farnham on Waters, 2606; 30 Am. & Eng. Ency. 329, and cases. This being true, the inquiry at once arises, what legal duty does the owner of the servient estate owe to the owner of the dominant estate in respect of his disposition of the waters? That he may not obstruct the flow by dams or other artificial structures so as to flood back upon the dominant estate is clear, and this is recognized by all the authorities which give sanction to the rule. Indeed, to thus speak is only another way of saying that the servient estate must receive the natural flowage. But beyond announcing the rule that as between dominant and servient estate owners, the latter must take the flowage, and may not cast it back,

the authorities are silent as to any further duty owing to the former. Counsel has found no case, and extended research on our own part has made discovery of none, which can be said to be an authority for extending the burden of the servitude as thus created by law. And in reason we cannot conceive that any such further burden may be imposed. This must be so because the necessity, out of which the serviture is born, is obviously satisfied by acceptance at all times of the water to the extent of the natural flow. Where necessity ends, the reason for the rule, and hence the rule itself, ends.

Now, as to the rights of the owner of the servient estate. Under the rule of this state, and regarding the water as a common enemy, he may get rid of it as best he can. Livingston v. McDonald, *supra;* Gould on Waters, section 265. Accordingly he may convert the water, and all thereof, to his own uses. And this is upon the theory that the water while upon the land becomes a part of the estate. The right is, therefore, based upon the dominion which the owner has over the soil, a dominion which extends indefinitely upwards and downwards. Or he may, in turn, assume the position of dominant estate owner, and insist upon an acceptance of the water by the proprietor owning the estate below him. In making use of the water, he may, while on his own land, collect the same into ditches or drains, and may thereby not only divert the course of the flow thereof but may hasten or accelerate such flow. He is answerable, when at all, to the lower proprietor only in respect of the place and manner of his delivery of the water. Gould on Waters, section 274; Farnham on Waters, 2620. If an estate owner, in making disposition of water, may by drainage measures hasten or accelerate the flow as against his lower proprietor, no good reason appears for saying that he should be held answerable for the same act to his upper proprietor. In either case it might be urged, of course, that the measure adopted should be reasonably necessary, and un-

marked by negligence. From this it would seem to follow that the owner of a dominant estate, considered as such at least, may not dictate the disposition of the waters after passing from his land. As did the proprietor above him, he may get rid of them as best he can, but he must accord to his lower proprietor the same right, and, if need be, guard his own land accordingly. And this must be so because otherwise a first proprietor from whose lands surface water ultimately finds its way over a large scope of territory below, extending for miles perhaps, might assert a servitude as against each lower proprietor in whatever direction of natural flowage, and might effectually prevent by proceeding in equity the reclamation or improvement of large portions of such territory, or, for that matter, all thereof, by showing simply that in times of flood the effect of the lower drainage as constructed would be to carry off an increased amount of soil from his land. So, too, it would be made possible for an action at law for damages to be waged by each succeeding proprietor in turn against all below him who had essayed to make improvements until finally the last in the scale should be mulcted at the suit of each and every proprietor claiming dominancy over him. Conceding the remoteness of such contingency, it is possible to occur if the doctrine of surface water servitudes is to be carried beyond the simple grant of right, based on necessity, to an upper proprietor to cast upon the estate immediately below him. To the limits of such simple grant, we think the doctrine must be confined.

Now, if this were all, it would seem that the case must be at an end. But counsel for appellant go farther and invoke the maxim *sic utere tuo ut alienum non lœdas* — so use your own property as not to injure that of your neighbor,— and insist that the case, in view of the peculiar circumstances, is brought within the operation thereof. Incident to this rule there is, of course, no strict matter of dominancy or serviency to be considered; there is no rela-

tion as by contract, and there is no easement as by grant or the equivalent thereof. If right there be on the part of plaintiff to control the use made by Weymiller of his property, it must arise out of and exist only by force and operation of law. It is the theory of counsel for plaintiff that to all intents and purposes the situation presents a case of the removal by an adjoining proprietor of the lateral support to the soil of his neighbor. That such a right exists at common law in a proper case, all the books agree. The right is a natural one, and like a surface water servitude, is predicated upon necessity. As the term itself implies, it has relation to the support which in a state of nature the soil of one owner receives at the boundary line from the soil of his neighbor. Washburn on Real Property, section 1296; *Larson v. Railway,* 110 Mo. 234 (19 S. W. 416, 16 L. R. A. 330, 33 Am. St. Rep. 439); *Schultz v. Byers,* 53 N. J. 442 (22 Atl. 514, 13 L. R. A. 569, 26 Am. St. Rep. 435.) But the doctrine cannot be extended to embrace cases of trespass generally. It goes no further than to inveigh against an interference within the zone of the natural support afforded by the soil conditions at the boundary line. Manifestly then we cannot concur in the view that the case before us is a proper one for the application of the doctrine. It is no part of the contention presented by the petition that the ditch constructed by defendant extended to or near the boundary line, or that plaintiff's soil at the boundary line in respect of its lateral support had been in any manner disturbed. The essence of the complaint is that by the accelerated flow of the surface water more soil had been carried away from the general surface of plaintiff's land than otherwise would have occurred, and that this resulted in the formation of a ditch along the length of Poole hollow, and of gullies back upon such portions of the land as drained into said hollow.

It is not within the limits of the argument of counsel, but should the action be regarded as in the nature of one to

recover for a trespass on realty, still we should be required to find that the ruling on demurrer was without error. " Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, discharging the same into any natural water course, or into any natural depression, whereby the water will be carried into some natural water course, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor to any person, or persons, or corporation." Chapter 70, page 75, Acts 30 General Assembly 1904. It is true that this statute was not enacted until after the damage sought to be recovered in this action had occurred. But the statute is no more than declaratory of the rule at common law. *Dorr v. Simerson,* 127 Iowa, 551. See, also, *Popplewell v. Hodkinson,* L. R. 4 Exch. 248; Schultz v. Byers, *supra,* citing in the note *Northern T. Co. v. Chicago,* 99 U. S. 635 (25 L. Ed. 336); *Hay v. Cohoes Co.,* 2 N. Y. 162 (51 Am. Dec. 279); *Marvin v. Brewster,* 55 N. Y. 556 (14 Am. Rep. 322). Here, as we have seen, the ditch complained of was wholly upon the land of Weymiller, and we think the rule as expressed in the statute broad enough to cover any damages occasioned the lands of plaintiff in character as complained of.

On the whole, we conclude that a cause of action was not stated in the petition, and accordingly that the demurrer was rightly sustained.

The judgment is *affirmed.*

Weaver, J., dissents.