AMERICAN SAND & GRAVEL CO. *v.* RUSHING.

(Division A.   Oct. 31, 1938.   Suggestion of Error Overruled Nov. 28, 1938.)

[184 So. 60.   No. 33321.]

Hannah & Simrall, of Hattiesburg, for appellant.

498

Dale & Koonce, of Hattiesburg, for appellee.

Argued orally by **T. C. Hannah**, for appellant, and by **T. Price Dale**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Bay Creek, in Forrest county, is a small and extremely crooked stream of the character generally designated in that part of the country as a "slash branch." It is about five or six miles in length, running in a general direction from north to south, and empties into Bowie River at or near Hattiesburg. In its natural state it had what may be called its valley of about thirty to one hundred feet in width, and this valley was thick with undergrowth of bushes and saplings, in addition to some larger trees. In dry weather there is little or no running water in the stream, but after heavy rains the volume of water was generally such as to overflow into its valley. In such overflows the progress of the water down-

ward was formerly somewhat slow or sluggish, owing to the gradual slope and the many crooks or bends in the channel, and the underbrush and other natural growth and obstructions in the valley.

About 1924, appellee purchased a tract of twelve acres of land about, or a little more than, a half mile above the mouth of Bay Creek, the creek or branch running through said tract. Appellee improved his land by building thereon and by removing the undergrowth, saplings and some of the trees, but did not straighten the crooked channel of the stream. Thereafter, about 1929, appellant, on its land situated next below the land of appellee, began its operations of mining gravel in the bed, and along the banks of the stream and next adjacent thereto, commencing at the mouth thereof and proceeding northward along the branch, finally arriving, at the time of this suit, at a point about 160 yards below or south of appellee's land. This resulted in a lake or pond along what had been the course of the stream, this lake or pond being from 20 to 40 feet deep and from 200 to 400 feet wide, and extending from the mouth of the branch to within 160 yards of appellee's land as aforesaid.

These operations by appellant caused a considerable acceleration in the stream as it passed through appellee's upper land, during overflow periods, with the further result, the soil in that location being sandy, that the stream cut across the bends and crooks theretofore existing, making new, but irregular channels, which new channels were of such depth and the cavings thereinto were of such width and of such location as to constitute a substantial damage to appellee's land,—certainly, to a measurable extent. Appellee sued appellant for said damage and recovered judgment on the theory, submitted to the jury on instructions procured by appellee to that effect, that if the operations by appellant on its lower lands caused the flow in the stream on appellee's upper land to be accelerated and that this acceleration resulted

in damage to appellee's land, appellant would be liable for such damage.

The extraction of mineral from the earth is a reasonable use of the property upon which the mineral is located. 3 Farnham on Waters, p. 2721. The strongest statement of a rule under modern authorities that may be laid down in behalf of an adjoining landowner is that the other or actor owner shall not use his land for an unjust or unreasonable purpose or in an unreasonable manner to the damage of another. To mine gravel, it is necessary to go down below the surface sometimes to the depth of many feet, and the inevitable result of such operations, if the land be comparatively level, is in most cases to create artificial lakes or ponds as the work progresses. Since this result is inevitable in the nature of things, it must be deemed a reasonable result, a reasonable operation or use, else we would be driven to say that such mining operations cannot rightfully be conducted at all, without obtaining by purchase from abutting land owners the right so to do. It would seem, therefore, on principle of necessity that, on account of such mining operations, there ought to be no cause of action for an incidental acceleration of a natural flow of waters along a natural watercourse, no foreign waters being added, and none being diverted or polluted, else the right of mining would no longer be a real right of a landowner, but would depend upon so many burdensome factors arising above and beyond the mine owner's land as to make the business intolerably hazardous, to the detriment of the development of the natural resources of the country.

But aside from the foregoing observations, it is an established doctrine that, generally speaking, persons operating mines are governed by the same rules in respect to injuries to adjoining property as are applicable to other uses of real estate. 40 C. J., p. 1188. We may look, therefore, to the analogies of other uses, and, particularly, may we look with confidence to that with which

we are familiar in this predominately agricultural state. So doing, we may refer to the rules of law respecting the use and improvement of agricultural lands and as concerns small natural watercourses flowing through them over the land of adjoining owners.

The great weight of authority in this country is that an upper riparian owner, to improve and reclaim his upper lands, may straighten the watercourse on his said upper lands by an artificial channel, along the course of said natural watercourse, as a substitute therefor, and of such width and depth as to prevent overflow on said upper lands, although the result of the improvement would be to increase the volume and speed of the flow in the stream at the line of the abutting owner below. The authorities on the subject are reviewed at length in San Gabriel Valley Country Club v. Los Angeles County, 182 Cal. 392, 188 P. 554, 9 A. L. R. 1200. See, also, the cases cited in Smurr on Farm Drainage, pp. 2 to 12, and compare Board of Drainage Com'rs v. Board of Drainage Com'rs, 130 Miss. 764, 95 So. 75, 28 A. L. R. 1250.

The upper landowner has no right to pollute the water as was the case in Mississippi Mills Co. v. Smith, 69 Miss. 299, 11 So. 26, 30 Am. St. Rep. 546, nor to make any other use of it or of the stream itself distinctly unreasonable; but the use first aforesaid is not unreasonable, unless made so by exceptional circumstances. On the contrary, it is, generally speaking, a proper use for the improvement and reclamation of the upper land,—a right which has been asserted and availed of in this state for generations.

Since then, as is the law according to the great weight of authority, the upper landowner may so improve and reclaim, it would follow, upon equal reason, that the owner below the complaining landowner may do the like, when there are no exceptional circumstances,—may straighten the watercourse on the lands below the complaining landowner by an artificial channel along the course of the said natural watercourse of such width and

depth as to prevent overflow on said lower lands, even though it increase the velocity of the flow on the upper lands. If this were not true, the practical result would be that no person other than the owner at the extreme head of the watercourse would have any such right of improvement and reclamation, and a vast acreage of land in this state would have to remain in a state of nature so far as the proprietary rights of the owners therein were concerned.

While the cases are numerous which establish the right, under ordinary circumstances, of improvement and reclamation in behalf of the upper landowner and against an owner below him, there seems to be few cases in respect to the similar right of the lower proprietor as against the upper owner. The nearest case in point which we have been able presently to find is Pohlman v. Chicago, M. & St. P. Ry. Co., 131 Iowa 89, 107 N. W. 1025, 6 L. R. A. (N. S.), 146; and while the opinion contains much discussion in regard to surface waters, the facts were such as to be equally applicable to a natural watercourse, particularly as regards such a watercourse as is involved in the case now before us. There the lower landowner in making improvements, such as above mentioned, was held not liable to the upper landowner for any injury to the latter by the acceleration of the flow on the land of the upper owner. And in that case it was held also that the rule in regard to lateral support has no application. We mention this because the argument of appellee in the case at bar rests largely on that doctrine.

As has been indicated in what has been said, we do not hold that either the upper or lower owner has the unqualified right, under all circumstances and for any and every purpose whatsoever, to straighten the watercourse and to widen and deepen it as aforementioned on his own land, regardless of all consequences to an upper or lower owner; but we do say that there is no occasion to enter upon a present discussion of those exceptional circumstances which might qualify the right,

for the reason that the circumstances of the situation in the case in hand furnish no factual basis for any such qualification here.

So it is then that appellant would have had the right in the situation here before us to straighten the watercourse on its land by an artificial channel along the original watercourse from or near the line of appellee's upper land, thence southward throughout appellant's lower land, and this channel of such width and depth as to carry the waters, including all overflow waters, unimpeded through the entire distance of appellant's land; and having that right, it could be no legal concern of the upper landowner that the lower proprietor thereupon entered upon its gravel operations along the said lower channel, since said operations would add nothing to the acceleration in or by the artificial channel which already would have been sufficient in itself to furnish an unimpeded flow at all stages of water. It is thus seen that appellant actually did here less than it had the legal right to do—both in fact and as to effect; wherefore the case presented is damnum absque injuria. Appellant was entitled to the peremptory charge requested by it.

Reversed and judgment here for appellant.