DAVID A. COLLIER, Appellee, v. ZETTIE WETMORE et al., Appellants.

Quieting title: DISCLAIMER: TAXATION OF ATTORNEY'S FEES. The
1  statute providing that a defendant, in an action to quiet title, refusing to execute and deliver a quit claim deed after tender of the expense of the same, cannot avoid the ordinary costs and attorney's fees by filing a disclaimer, does not apply to cases where the defendant in good faith submits his adverse claim for determination by the court. Thus in an action for partition, to which defendants filed a cross bill asking to have their title quieted, they could not upon rendition of judgment in their favor, claim an attorney's fee, although having complied with the statute.

Same: DISCRETION OF COURT. The statute authorizing the taxation of
2  attorney's fees upon the filing of a disclaimer in quieting title actions makes the same a matter of discretion with the trial court; and the appellate court will hesitate to interfere with an order refusing the taxation of such fees, in the absence of a showing of an abuse of such discretion.

*Appeal from Plymouth District Court.*—HON. J. F. OLIVER, Judge.

SATURDAY, MARCH 14, 1914.

THE opinion sufficiently states the case.—*Affirmed*.

*F. W. Edwards, J. M. Wormley* and *Sager, Sweet & Edwards,* for appellants.

*F. T. Hughes* and *H. S. Martin,* for appellee.

WEAVER, J.—The plaintiff, Collier, claiming to be the owner of a one-third interest in certain real estate, brought this action in partition. At the same time he brought one hundred and seventy-one other actions of like character against other defendants for the partition of as many other lots or tracts of land. The claim of title thus asserted was of the same general character in all the cases; the alleged title being based on esentially the same state of facts, and traced from the same common source, to-wit, a certain quitclaim deed from one George B. Smythe, the surviving husband of a deceased former owner. After these actions were begun, but twenty days before filing any answer or cross-bill, the defendants in each case formally requested the plaintiff to execute to them a quitclaim deed to the lot or tract of land in question, and tendered to him $1.25 to cover the cost of executing and delivering such conveyance, and in each instance such request and tender were refused. Thereafter in each case the defendants answered, denying plaintiff's claim of title, and by way of counterclaim or cross-bill affirmatively alleged title in fee in themselves, which they asked to have quieted against plaintiff. In each case, also, they further pleaded the fact of their request or demand upon plaintiff for a quitclaim deed, and the tender to him of said sum of $1.25 to cover the necessary expense so occasioned, and his refusal thereof, on which showing they asked that an attorney's fee be allowed them as provided in Code, section 4226.

It should be stated that many of these defendants derived the title to the lands in controversy through conveyances with warranty mediately or immediately from a corporation known as the Iowa Railroad Land Company, which company also still held other lands affected by like claims of title on the part of plaintiff, and that, to protect its own interests and those of its grantees, said corporation instituted an action in equity to quiet said title against the claims of Collier, and naturally made common cause with the defendants in the partition cases.

Issues being joined, the parties by their counsel entered into a stipulation as follows:

It is hereby stipulated and agreed as follows between the parties to the above-entitled suit and all other like suits brought by David A. Collier in said court for the partition of the town lots in the town of Kingsley, Plymouth county, Iowa, and of lands in Plymouth county, Iowa:

(1) That the defendants may bring on for trial at the December, 1908, term of said court one of said causes, and such one as they may file trial notices in within one month prior to the first day of the next term of the district court of said Plymouth county.

(2) That plaintiff may bring on for trial one of said causes for the same term of court upon filing a like trial notice in said cause.

(3) That the remainder of said causes shall stand continued with leave to both plaintiff and defendant to further plead after the trial of the cause or causes above mentioned, if either party shall so desire.

(4) That depositions and evidence may be taken on behalf of the plaintiff or defendant in the cause designated for trial, and, when so taken, may be read not only in the cause above, or the cause upon which said trial was had, but in all other similar causes pending in said court, with the same force and effect as if taken in each of said causes.

(5) That any testimony or evidence given or taken on the trial of said cause or causes may be read on the trial of each and every other cause, if trials therein are had.

(6) Since the questions of law and fact are practically the same in all the above cases, it is the purpose of this stipulation to save counsel as much time and labor as possible in determining the questions involved.

Pursuant to this stipulation the parties designated for the test, of actual trial the case brought by the Railroad Land Company to quiet title and the case brought by Collier against one Smaltz for partition. These two actions, while retaining their independent character, were treated as one for the purposes of trial, and submitted upon the same evidence and arguments. The trial court found against the claims of Collier,

ordered that the deed of conveyance upon which his claim of title was founded be canceled of record, that said Collier be forever barred, estopped, and enjoined from asserting any right or title in any of the described lands against the title of the Railroad Land Company or its grantees, and that he be enjoined and restrained from further prosecution of any of the other pending suits. It was further provided that said decree should not affect the right of any of the defendants in the actions in which proceedings had been suspended by stipulation, or prevent them from taking decrees against Collier in their individual cases quieting their respective titles, and for such attorney's fees claimed by them as they might thereafter be found entitled to recover. Collier thereupon prosecuted an appeal to this court in both cases, and both were affirmed in a single opinion reported in 149 Iowa, 230.

The appeals having been disposed of, Collier did not further prosecute the remaining 171 cases, and in each of them the defendants asked and were granted decrees upon their cross-bills establishing and quieting their title as prayed, with judgment against plaintiff for taxable costs, but refusing to tax attorney's fees claimed by the defendants. From this last ruling, the denial of defendants' demand for attorney's fees, the appeal now before us has been taken.

I. Question is raised at the outset whether the court has jurisdiction to entertain the appeal, because it is said, appeals from a mere question of taxing costs will not be considered, and because the amount in controversy does not in any one case exceed $100. As we find the case may be affirmed on its merits, we shall not take time to consider the objection thus raised. It is at least open to doubt whether a refusal to tax an attorney's fee, where a party has a statutory right thereto, comes within the rule which makes the taxation of ordinary costs nonappealable. So, also, it is a fair question, which we need not now attempt to decide, whether the case is not within the statute which makes a judgment or decree in an action in-

volving title to real estate an exception to the limitation provided in Code, section 4110.

II. The appellants' demand for the taxation of attorney's fees is based upon Code, section 4226, and if, when properly construed, that section is not applicable to the circumstances here presented, then admittedly the ruling of the trial court must be affirmed. The statute in question reads as follows:

1. QUIETING TITLE: disclaimer: taxation of attorneys' fees.

Section 4226: "If a party, twenty days or more before the bringing suit to quiet title to real estate, shall request of the person holding an apparent adverse interest or right therein the execution of a quitclaim deed thereto, and shall also tender to him one dollar and twenty-five cents to cover the expense of the execution and delivery of the deed, and if he shall refuse or neglect to comply therewith, the filing of a disclaimer of interest or right shall not avoid the costs in an action afterwards brought, and the court may, in its discretion, *if the plaintiff succeeds, tax, in addition to the ordinary costs of court, an attorney's fee for plaintiff's attorney, not exceeding $25,*" where a single tract of not more than forty acres is involved, and a proportionately greater maximum where the property is of greater extent.

The argument by which the claim is sought to be sustained is that the filing of the counterclaim or cross-bill asking to have title quieted in defendants was in effect the beginning of an independent action for affirmative relief, and the provision for attorney's fees is applicable to precisely the same extent as if the defendant had begun an entirely distinct and separate suit. It is very evident from the reading of the statute that the Legislature did not intend to make an attorney's fee taxable in every action to quiet title for, if such had been the purpose, we may assume it would have been expressed in clear terms. The circumstances giving rise to this provision are matters of common knowledge to members of the profession. In the earlier years of the history of this state

much carelessness in conveyancing and in the keeping and preservation of public records, to say nothing of reckless speculation in cheap lands without proper attention to the preservation of muniments of title, and the trading and trafficking in mere apparent equities having no meritorious foundation, naturally resulted in leaving the record title to much of our real estate clouded by apparent defects which tended to alarm cautious buyers, and to depreciate the market value of real property. To remove these defects was often a matter of much trouble and expense, even where they were purely formal or technical. It not infrequently happened that persons asserting no claim of title, but from whom a quitclaim or disclaimer of some kind was necessary to perfect a record, refused to give it until they had forced the real owner to pay a substantial, if not exorbitant, consideration for the release of merely nominal claims. To put an end to this extortion and unnecessary expense and vexatious litigation, this statute was enacted. Prior thereto an obstinate or litigious holder of an apparent record interest in land, though without the slightest merit or value in fact, could refuse to remove this cloud, and, when the real owner had been driven to bring an action against him to quiet title, he had only to appear, file a disclaimer, and leave the injured party to pay the expense. This abuse is quite effectually remedied by the present statute. Under it, when the proper demand and tender have been made, "the filing of a disclaimer shall not avoid liability for costs in an action afterward brought and the court may in its discretion, if plaintiff succeeds, tax . . . an attorney's fee." The reading of the statute leaves wide room for doubt whether the provision has any application, except where there is an attempt by such defendant to escape liability for costs by disclaimer of title after fair opportunity given him to make such disclaimer effective by quitclaim deed before suit is brought. To say the least, we think it clear the statute was not intended to penalize with the taxation of an attorney's fee the party who asserts what

he believes to be a valid interest in land adverse to the claim of a plaintiff in proceedings to quiet title, and appears in good faith and submits such alleged interest to the court's adjudication. It may well be that, if the claim so pleaded is shown to be without reasonable foundation, or the defense made is merely obstructive or vexatious, the court, in the exercise of the discretion with which it is expressly clothed by the statute, may tax an attorney's fee where a demand and tender have been made, even in the absence of a disclaimer by the defendant.

But we cannot agree with the appellant's contention that, in claiming an attorney's fee in this case, they stand upon precisely the same footing as if the partition case had never been begun, and they had themselves brought an action against Collier to quiet title after due demand of deed and tender of money to pay the expense. The purpose of the statute, as we have already noted, is to avoid litigation, and enable the landowner to get rid of clouds upon his title by negotiation and agreement rather than by decree of court. But in the case before us the defendants were already in court. By plaintiff's action, in which he asserted a one-third ownership in fee, and demanded partition, he presented for the court's consideration the validity of his claim of title, and the defendants, having been brought into the court's jurisdiction by proper notice, and desiring to contest his claim, could do so by mere denial, or by asserting affirmatively their own title, or both. That case, tried to final decree, would have settled their respective rights in the premises forever. Defendants could not thereafter have maintained another action against the same parties to adjudicate again their respective claims of ownership. They could, of course, in their answer, couple with such claim of ownership a prayer for affirmative relief by way of a decree quieting their title as they in fact did, and while, to this extent, the pleading was the equivalent of a petition in an independent action, in that it would support a grant of the same relief which

could have been so obtained, there was in fact no independent action. While the pleading stated grounds upon which affirmative relief could be granted, such grounds were in a very just sense of the word pleaded defensively, in that, if such allegations were truly stated and sustained by the evidence, they constituted an insuperable reason why Collier's claim should be rejected and held for naught. If, after such action for partition had been begun, and opportunity thus afforded the defendant to join issue upon plaintiff's assertion of title, and there contest, determine, and settle all their respective claims of right, defendants, while answering defensively only, had instituted a wholly separate and independent action to quiet their title to the same land, the court would undoubtedly have refused to permit its prosecution, or would have ordered the consolidation of the cases, giving the petition in the latter case the effect of an answer or counterclaim in the action first begun. Collier was the original moving party. He was not, so far as appears, holding a merely nominal claim which he knew to be valueless for the purpose of forcing a bid for its release. He had taken a deed of conveyance from one who had at least a fairly debatable claim of title, and had brought that title into court for adjudication, summoning all persons adversely interested to appear and defend. In that proceeding the widest possible opportunity was afforded for each and every party to the case to present and establish his claim of title, if any he had. Indeed, such party could not safely refuse to make a full showing and defense without inviting an adjudication which would fairly estop him from thereafter asserting any right in the subject-matter of controversy. To say that, when the plaintiff has done this, the defendants, by the simple expedient of a demand and tender under a statute which quite clearly has no application to partition proceedings, may force him to abandon the same, unless he elects to go ahead at the hazard of being mulcted in a very burdensome aggregate of attorney's fees for the benefit of the opposing parties—a consequence

which is attached to failure in no other kind of litigation known to our practice—is a proposition which cannot be justified as a matter of simple justice, and is not, we believe, contemplated by the statute.

There is still another aspect of the case which we think is equally conclusive against the position of the appellants. The taxation of an attorney's fee under Code, section 4226,

2. SAME: discretion of court. is in no case a matter of right to be granted at the demand of a party who has given proper notice and made the proper tender. The Legislature seems to have recognized the possibility that in at least some instances the party holding an adverse claim of right or title, and refusing to release the same by quitclaim, may act in good faith through an honest, even if mistaken, estimate of law or fact, and that the taxation of attorney's fees in all cases where such claims are overruled would not be equitable. The provision for such fees was therefore not made absolute, but permissive only; the taxation being allowed "in the discretion of the court." It follows, we think, that this court should be slow to interfere with that discretion, except where abuse thereof is shown. The trial court refused to make any allowance of this nature. The record does not disclose the ground of the refusal. It may have been because the court did not think the statute had application to actions of this nature, or it may have believed that plaintiff's case was brought in good faith, and that, in the exercise of the discretion given by the statute, the imposition of such a charge would not be equitable. The admitted facts would seem to support either conclusion.

Other phases of the question have been argued by counsel; but those of which we have made mention appear to be controlling, and we shall not further pursue the discussion. We have thought it unnecessary to state or discuss the nature and origin of the title under which the plaintiff asserted his claim to a share in the lands in controversy. They are sufficiently set forth in the opinion handed down on the for-

mer appeal, and this appeal requires no review thereof. All parties have accepted the result there announced as final and conclusive upon all disputed questions of property right.

For the reasons already stated, we hold that the ruling appealed from is right, and it is therefore—*Affirmed.*

LADD, C. J., and EVANS and PRESTON, JJ., concurring.