SAMUEL J. MILLER, Appellant, v. CHARLES H. PERKINS et al., Appellees.

**WATERS AND WATERCOURSES:** Surface Waters—Relative Rights
1 of Dominant and Servient Landowners. Principle reaffirmed that the owner of servient lands may not substantially interfere with the natural passage of water from dominant lands, but that, after such water has passed upon the servient lands, the owner of such latter lands may handle the water as he pleases, so long as no damage results to the dominant land.

**APPEAL AND ERROR:** Remand in Equity. An equitable action may,
2 on appeal, be remanded for the taking of testimony on a question of fact, in order that justice may be meted out to all parties.

Headnote 1: 40 Cyc. p. 641. Headnote 2: 4 C. J. p. 1116.

Headnote 1: 21 L. R. A. 598; 27 R. C. L. 1140.

*Appeal from Henry District Court.*—JAMES D. SMYTH, Judge.

NOVEMBER 15, 1927.

Suit to enjoin the defendants from obstructing the natural flow of water from the land of plaintiff. From an order by the court dismissing plaintiff's petition he appeals.—*Affirmed as to Chicago, Burlington & Quincy Railway Company; modified and remanded as to other parties.*

*McCoid, McCoid & McCoid,* for appellant.

*La Monte Cowles, Carl M. Fischer,* and *Glenn F. Cray,* for Charles H. Perkins, George C. Perkins, Executor, George C. Perkins, and Alfred Erickson, appellees.

*J. C. Pryor* and *W. D. Eaton,* for Chicago, Burlington & Quincy Railway Company, appellee.

ALBERT, J.—Defendant Perkins is the owner of three 40-acre tracts of land, lying in line, the north one half of the northwest one quarter of Section 10, and the northwest one quarter of the northeast one quarter of the same section. Adjoining Perkins' middle 40 on the north, plaintiff Miller owns an 80-acre tract, being the east one half of the southwest one quarter of Section 3. Between these two tracts of land is the right of way of the Chicago, Burlington & Quincy Railway Company. The plaintiff claims that the defendants are obstructing the natural flowage of water from his land to the south, and asks an injunction restraining defendants from so doing. The tracks of the defendant company are constructed on a fill, through which there is a culvert for the passage of water between these two tracts of land. Plaintiff claims that his land is the dominant estate, and that the water flows naturally to the south through this culvert onto the land now owned by the defendant Perkins. On Perkins' land is a swale or slough extending in a northeasterly and southwesterly direction. This water from the Miller land finds its way, after leaving the railroad culvert, across the land of Perkins to this swale, and thence flows in a northeasterly direction through the swale to right of way of the railroad company at a point somewhere near the intersection of the east line of Perkins' land with the railway company's right of way.

1. WATERS AND WATERCOURSES: surface waters: relative rights of dominant and servient landowners.

About the year 1909 or 1910, one Huston, the then owner of the Perkins land, obtained permission from the railroad company to construct a ditch on its right of way on the south side of the track, from a point at or near the outlet of the cement culvert, in an easterly direction, to intersect the aforesaid slough or swale at or near the point where it passes from the Perkins land on the company's right of way; and under this permission, Huston constructed such ditch; and also on the right of way of the railway company, south of the cement culvert, he constructed a dam, thus changing the course of the water that came from the Miller land, so that, instead of passing onto the Perkins land, it passed down this ditch along the right of way, and emptied into the aforesaid slough or swale, and continued thence on east on the right of way. The railroad company formerly had a pile culvert at this point; but,

about the time this ditch was constructed, they put in a cement culvert, the bottom of which was on a level with the ditch constructed as aforesaid, and this water continued to thus flow from the Miller land through the culvert and eastward in this ditch for many years. Miller had two 8-inch strings of tile that emptied through a bulkhead on his land at or near the line between his land and the right of way of the railroad company. As time progressed, naturally this open ditch constructed by Huston along the right of way filled up largely by the action of the elements, and as a result the cement culvert filled. The company at various times cleaned out this culvert, and on some occasions, when high waters in the spring washed out the dam, the section hands of the company reconstructed the same. But, as the aforesaid ditch continued to fill, by the action of the elements and debris that was carried therein by the water, weeds and grass grew therein, and it became ineffective; and as a result, the culvert under the railroad filled with dirt and debris, until the space left was somewhere between 18 inches and 2 feet. This resulted in backing the water up on the Miller land, and destroying his crops in certain seasons; and it is for this flooding of his land that he asks this injunction.

It appears that, in 1924, George C. Perkins, who had then acquired title to the 120 acres herein described, wrote a letter to the railroad company, notifying it that he did not care to have the dam rebuilt or maintained; that he understood that Miller was complaining about the water's backing on his land; and that he (Huston) expected to hold the railroad company responsible for any injury resulting therefrom. Thereupon, the railroad company destroyed the dam, or at least dug a ditch to carry the water around the dam, thus emptying it onto the Perkins land, as it formerly did.

One Erickson, who is a defendant herein, was at this time a tenant on the Perkins land, and was so at the time of the commencement of this lawsuit. After the railroad company destroyed the dam, or dug the ditch around the end of it onto the Perkins land, Erickson rebuilt it, on one or two occasions, and it was again torn down by the railroad company. Later, Erickson constructed a dam some distance from the old dam, and on the Perkins land, which seems, under the evidence, to have been built higher, and to have been more effective in

backing the water onto the Miller land. This last dam was built by Erickson in 1925.

This is a summary of the facts as we glean them from the record.

The first proposition urged by the plaintiff is that he has established that there was a natural watercourse from the Miller land through the culvert onto the Perkins land. From the record in this case we find that there is no question about this proposition. The evidence in the case, together with the topography of the two pieces of land, shows unquestionably that the water from the Miller land naturally flowed through said culvert onto and across the Perkins land; so that, in the first instance, the Perkins land, being the servient estate, was burdened with the care of water from the Miller land. It of course follows, however, that, after the water left the Miller land in its natural flowage, it was no concern of Miller's how this water was taken care of by the Perkins land, so long as its treatment and handling did not interfere with the Miller land. In other words, the owner of the Perkins land had a right to change the course of this water, after it left the Miller land, and carry it east along the railroad right of way in any manner he saw fit; but in doing this, he was bound to see that his handling of the water was not to the injury of Miller. This, of course, carries with it the idea that it was the duty of the owner of the Perkins land to at all times keep this artificial ditch constructed by him open and free from obstructions, so long as he chose to handle this water in this way; and if he failed so to do, and the Miller land was damaged by reason of said failure, then there is no reason why he should not respond to Miller for such damages.

It is apparent, under the record in this case, that, when the railroad company destroyed the dam on its right of way, the water coming from the Miller land passed through this cement culvert and onto the Perkins land as it naturally did; and, that being true, we are unable to see where there would be any liability on the part of the railroad company.

The real trouble in this case about which plaintiff Miller complains comes from the construction of the dam by the tenant Erickson, which seems to have effectively backed this water onto the Miller land.

Pending the trial, the parties hereto entered into a stipula-

tion that the artificial ditch constructed by Huston on the right of way of the railroad company from the cement culvert eastward should be re-excavated, so as to carry the water that came from the Miller land through this culvert; and this seems to have been done in a reasonably effective way. The stipulation in the case provided, however, that it was made "without prejudice to the rights of any party hereto," and presumptively we would have no right to consider the same. However, both parties, in their evidence and in their arguments, refer to this stipulation and its effect, one side claiming that the reconstructed ditch is effective to carry all water from the Miller land, and Miller claiming that it is not large enough and deep enough for that purpose. We presume we have a right to consider the same, even in the face of the limitations in the stipulation. This water, however, is deflected into this ditch, after passing through the culvert, onto the Miller land, by reason of the dam put in by the tenant Erickson; and it would seem, under the record, that, if it were not for this dam, the water would still continue to flow to the south onto the Perkins land.

2. APPEAL AND ERROR: remand in equity.

It would appear, therefore, in its last analysis, that Miller's real troubles in this case about which he complains are primarily chargeable to this dam last constructed; and, as no one seems to question the fact that at least part of the flooding of Miller's land is caused by this water's being backed up onto his land, that he should have relief. There is nothing in the record to show that the owners of the Perkins land authorized or directed the tenant to construct this dam, and we can see no reason why they should be called upon to respond to the plaintiff herein. His damages being traceable wholly to the dam constructed by Erickson, he should have been granted the injunctive relief prayed for against Erickson. The owners of the Perkins land were parties to the stipulation for the reconstruction of the artificial ditch across the south side of the railroad right of way, and if, as claimed by them, the rebuilding and reconstruction of this ditch will relieve the situation from the complaints of the plaintiff, Miller, then, of course, he ought not to have injunctive relief against the owners of the Perkins land. We are not quite certain, under the testimony in the case, whether or not this will relieve the situation for Miller,

but do hold that he is entitled to relief. If, however, this ditch, which must be cared for by the owners of the Perkins land, does and continues to relieve the Miller land of this overflow about which he complains, the maintenance of this dam then becomes immaterial to Miller.

To the end, therefore, that justice may be meted out to all of these parties, it is ordered that the case be remanded to the district court, so far as Miller, Erickson, and the owners of the Perkins land are concerned, for determination of the question of whether or not the ditch constructed under the stipulation is sufficient to free Miller's land from this overflow. If it is, then Miller has no right to complain. If it is not, and the court does not see fit to give the owners of the Perkins land the right to further excavate and rehabilitate said ditch, then the district court will be warranted in issuing an injunction against Erickson and the owners of the Perkins land as prayed herein.

The case is affirmed as to the Chicago, Burlington, & Quincy Railway Company, but will be remanded to the district court for further proceedings in accordance with this opinion.

It is ordered that each party stand his own costs on this appeal.—*Affirmed* as to Chicago, Burlington & Quincy Railway Company; *modified and remanded* as to other parties.

EVANS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.