# In the Iowa Supreme Court

No. 24–0298

Submitted April 16, 2025—Filed  June 6, 2025

**Martin Robinson, Paula Robinson, Tom Robinson,** and **Laura Robinson,**

Appellants,

vs.

**Central Iowa Power Cooperative; Coggon Solar, LLC; Kenneth M. Ludolph;** and **Deanice R. Ludolph,**

Appellees.

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, judge.

The appellants challenge a district court ruling that they do not have a drainage easement at a fixed point across their neighbors' property, do not have a right to access and repair drainage tile on their neighbors' property, and awarding attorney fees to opposing parties pursuant to Iowa Code section 649.5 (2022). **Affirmed.**

McDonald, J., delivered the opinion of the court in which all justices joined.

Gregg Geerdes (argued), Iowa City, for appellants.

Dennis L. Puckett and Jeffrey Schultz of Sullivan & Ward, P.C., West Des Moines, for appellee Central Iowa Power Cooperative.

Paul D. Gamez (argued), Brian J. Fagan, and Nicholas Petersen of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellees Central Iowa Power Cooperative and Coggon Solar, LLC.

Joseph T. Moreland (argued) of Hayek, Moreland, Smith, and Bergus, L.L.P., Iowa City, for appellees Kenneth M. Ludolph and Deanice R. Ludolph.

**McDonald, Justice.**

This case involves a dispute among neighbors regarding the right to control and access a drainage tile line. Siblings Martin, Paula, and Tom Robinson (and Tom's wife, Laura) own adjoining farm properties. They claim to have a drainage easement across two properties, the first owned by Central Iowa Power Cooperative (CIPCO), and the second owned by Kenneth and Deanice Ludolph, which the Ludolphs leased, in part, to Coggon Solar, LLC. The Robinsons believe that CIPCO violated the drainage easement when it rerouted a drainage tile line that ran beneath CIPCO's property and that Coggon Solar will violate the drainage easement in developing a solar farm on the property leased from the Ludolphs. The Robinsons brought this suit for declaratory and injunctive relief and damages against CIPCO, the Ludolphs, and Coggon Solar. CIPCO and Coggon Solar asserted a quiet-title action as a counterclaim. The district court dismissed the Robinsons' lawsuit, quieted title in favor of the defendants, and awarded statutory attorney fees. For the reasons expressed below, we affirm the judgment of the district court.

I.

The Robinson siblings own adjoining parcels of farm property, which they acquired from their parents. For ease of reading, we refer to them as "the Robinsons" and refer to their properties as "the Robinson property," singular, even though multiple parcels are involved. Surface water from the Robinson property flows downhill across the CIPCO and Ludolph properties in its natural course. Prior to the Robinsons' parents' acquisition of the farm in 1961, a drainage tile line was installed along the natural drainage route. While no written easement exists, the Robinsons claim that the tile line gives them a drainage easement following the natural drainage across the CIPCO and Ludolph

properties. They further claim that the path of the drainage easement is fixed at the original location of the tile line and cannot be moved without their consent.

CIPCO owns property immediately south and across the road from the Robinsons. CIPCO has operated an electrical substation on this property since the 1950s. The drainage tile line carried surface water from the Robinson property under a road and through a culvert onto the northern edge of the CIPCO property. The original tile line then ran south across the CIPCO property and discharged onto the Ludolph property before eventually draining into Heatons Creek. In 2014, CIPCO constructed a second electrical substation on its property. During construction, a contractor uncovered the tile line. CIPCO hired Klima Tiling to reroute the tile around the proposed location of the new substation. Tom Robinson later called Klima Tiling "highly esteemed." Klima Tiling rerouted the tile line on the CIPCO property approximately 100 feet to the west but did not change the historical inlet and outlet of the drainage. The Robinsons were unaware the tile line had been rerouted until 2018.

The Ludolphs have been neighbors with the Robinsons since 1971. The Ludolph farmland is immediately to the south, across the road from the Robinsons, and to the south and west of CIPCO. It is undisputed their property is downhill from the Robinson property. Coggon Solar has announced its intention to build a 750-acre solar farm, part of which will be on the Ludolphs property. The solar farm is estimated to be a $150 million project. It would require Coggon Solar to affix solar panels into the ground with steel pilings. The Robinsons contend the steel pilings will interfere with their claimed drainage easement.

In April 2021, CIPCO and Coggon Solar entered an agreement where CIPCO agreed to purchase electricity generated by the solar farm. To meet the

demands of this agreement, CIPCO decided to again expand its substation. The county approved this expansion so long as CIPCO made certain improvements to the tile line under its property. The Robinsons were involved in the improvement process. They helped select an engineer, Donald Etler, to examine the tile line. Etler prepared a report detailing faults in the existing tile and recommending upgrades to bring the tile into compliance with modern standards. CIPCO hired a contractor who made many of the improvements on the CIPCO property. The Robinsons' farm tenant later stated that these improvements looked "Cadillac" and that the tile drained well. The Robinsons did not permit improvements to be made on their property.

It appears the Robinsons are not in support of the solar farm project. They have objected to the solar farm project before the Iowa Utilities Board, the county board of supervisors, the county board of adjustment, and the United States Department of Agriculture. The Robinsons have also filed other lawsuits challenging the project. *See, e.g., Robinson v. Linn Cnty. Bd. of Supervisors*, No. 23–0705, 2024 WL 2842296 (Iowa Ct. App. June 5, 2024).

In June 2022, the Robinsons filed this suit against CIPCO, the Ludolphs, and Coggon Solar. The Robinsons claimed that they had an easement in the location of the tile line as it existed before the 2014 rerouting. They claimed that moving the tile line westward on the CIPCO property violated their easement rights. They also claimed that construction of the solar farm would interfere with their easement rights. The Robinsons asserted several claims against the defendants: first, a tort claim for damages caused by rerouting the drainage tile; second, a claim for breach of contract; and third, a claim for nuisance. The Robinsons sought a declaratory judgment confirming and establishing a drainage easement along the original tile line, an injunction requiring CIPCO to

restore the tile line to the original route, an injunction prohibiting and requiring removal of improvements on top of the claimed easement, the abatement of any existing nuisances, and damages for the impairment of the Robinsons' drainage.

The defendants denied the Robinsons' claims, and CIPCO and Coggon Solar asserted a counterclaim against the Robinsons to quiet title and two counterclaims for tortious interference. CIPCO and Coggon Solar claimed that the Robinsons' lawsuit was merely a pretext designed to impede development of the solar farm project and that the Robinsons' "unsubstantiated and/or false lawsuits and complaints" were damaging.

The Ludolphs filed a motion for summary judgment, and CIPCO and Coggon Solar jointly filed a motion for partial summary judgment. The defendants conceded that the Robinsons, as owners of the dominant estate, had a common law right to discharge surface water onto their servient estates. However, they denied that the Robinsons had any additional easement rights, such as the right to dictate the location of the drainage tile on their properties or the right to access and repair the drainage tile on their properties. CIPCO and Coggon Solar also requested that the court enter an order quieting title in their favor.

The Robinsons resisted the motions for summary judgment. They contended that they had common law, statutory, and prescriptive drainage easement rights. They further claimed that their easement was along the original fixed route and that their easement rights included the right to access and repair the drainage tile across the CIPCO and Ludolph properties. They maintained that CIPCO violated their rights when it rerouted the tile line, and they maintained that Coggon Solar's plan to use steel pilings would violate their easement rights.

The district court granted the defendants' motions. The court held that the Robinsons had the right to drain surface water onto the servient estates but not along a fixed route. It concluded that the Robinsons did not have a right to access or make repairs to tiling on the servient estates and that CIPCO had the right to redirect or reroute surface water on its property so long as it did not burden the Robinsons. The court dismissed the Robinsons' claims against CIPCO and Coggon Solar, except for the nuisance claim, and all of the claims against the Ludolphs. The district court also entered judgment in favor of CIPCO and Coggon Solar on the quiet-title action, declaring that the Robinsons "have no easement for a particular path of drainage tiling underneath property owned by either CIPCO or Defendants Ludolph."

CIPCO and Coggon Solar filed a second motion for summary judgment with respect to the nuisance claim. CIPCO and Coggon Solar argued that the Robinsons could not prove any liability or damages as a matter of law and that any claimed damages for crop loss and diminution in property value were too speculative and should be dismissed. They also argued that the Robinsons' nuisance claim failed as a matter of law. The district court granted the motion.

The district court later granted an application for attorney fees relating to the quiet-title action pursuant to Iowa Code section 649.5, in a total amount of $204,006.22. The court determined that fee-shifting was warranted for work related to the quiet-title action because the Robinsons "clouded title to real estate by insisting on a position in the absence of relevant legal support in order to slow down or stop construction of the solar farm." The court examined the record and concluded that the fees were reasonable under the circumstances.

II.

The Robinsons appeal from the district court's grant of summary judgment. Our review is for the correction of errors at law. *Hunter Three Farms, LLC v. Hunter*, 18 N.W.3d 1, 4–5 (Iowa 2025). "A grant of summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *City of West Liberty v. Emps. Mut. Cas. Co.*, 922 N.W.2d 876, 879 (Iowa 2019) (quoting *Just v. Farmers Auto. Ins.*, 877 N.W.2d 467, 471 (Iowa 2016)). "An issue is 'genuine' if the evidence in the record 'is such that a reasonable jury could return a verdict for the non-moving party.'" *Penny v. City of Winterset*, 999 N.W.2d 650, 652 (Iowa 2023) (quoting *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015)). We review the record in the light most favorable to the Robinsons. *See Teig v. Chavez*, 8 N.W.3d 484, 490 (Iowa 2024).

III.

We first address the issues related to the Robinsons' drainage rights. The Robinsons concede that no written easement agreement exists. However, they claim to have robust common law, statutory, and prescriptive drainage easement rights across the CIPCO and Ludolph properties along the fixed route of the original tile line. They further claim their rights include the right to personally access the drainage tile on the CIPCO and Ludolph properties. The Robinsons contend that when the tile line on the CIPCO property was relocated, their drainage easement rights were violated and their drainage was impaired.

A.

It is not disputed that the Robinsons have common law drainage rights. Since the founding of this state, this court has recognized the general rule that surface water "is a common enemy which each landowner may reasonably get

rid of in the best manner possible; but in relieving himself he must respect the rights of his neighbor." *Livingston v. McDonald*, 21 Iowa 160, 174 (1866); *see also Pohlman v. Chi., M. & St. P. Ry.*, 107 N.W. 1025, 1026 (Iowa 1906) ("[A]s to the rights of the owner of the servient estate[,] . . . . he may get rid of [surface water] as best he can."). Our caselaw affords the Robinsons, as owners of the dominant estate, a "legal and natural easement in the lower or servient estate[s] for the drainage of surface waters." *Ditch v. Hess*, 212 N.W.2d 442, 448 (Iowa 1973) (quoting *Witthauer v. City of Council Bluffs*, 133 N.W.2d 71, 74–75 (Iowa 1965)); *see also Braverman v. Eicher*, 238 N.W.2d 331, 334 (Iowa 1976) ("[A] servient estate must accept surface waters which drain thereon from a dominant estate."); *Pohlman*, 107 N.W. at 1026 (stating that the owner of the servient estate "was undoubtedly required to receive all the waters naturally flowing from the higher ground"); *Sojka v. Breck*, No. 12–1019, 2013 WL 1453241, at *4 (Iowa Ct. App. Apr. 10, 2013) ("The dominant estate owner has a legal and natural easement in the servient estate for surface water drainage."); *cf. Vanneat v. Fleming*, 44 N.W. 906, 908 (Iowa 1890) ("[T]here is no difference between underground water, collected by tiling, and surface water."). "[T]he natural flow or passage of the waters cannot be interrupted or prevented by the servient owner to the detriment or injury of the dominant proprietor . . . ." *Ditch*, 212 N.W.2d at 448 (quoting *Witthauer*, 133 N.W.2d at 75).

But the Robinsons' undisputed drainage rights do not extend as far as they claim. "[W]hen water is moved from the dominant land to the servient land by nature, or by a tile line in the natural course of drainage, the water becomes the water of the servient owner . . . ." *McKeon v. Brammer*, 29 N.W.2d 518, 521 (Iowa 1947); *see also Pohlman*, 107 N.W. at 1026 ("[W]ater while upon the land becomes a part of the estate."). The common law obligation of the servient estates

is only to receive the drainage and not interrupt or prevent "the natural flow or passage of the waters . . . to the detriment or injury of the [Robinsons]." *Ditch*, 212 N.W.2d at 448 (quoting *Witthauer*, 113 N.W.2d at 75); *see also Moody v. Van Wechel*, 402 N.W.2d 752, 757 (Iowa 1987) ("Water from a dominant estate must be allowed to flow in its natural course onto a servient estate."); *Jenkins v. Pedersen*, 212 N.W.2d 415, 419 (Iowa 1973) ("[W]here surface water has affixed in certain course, its flow cannot be interrupted to the injury of an adjoining proprietor . . . ."); *Besler v. Greenwood*, 212 N.W. 120, 120 (Iowa 1927) (stating that it is "well settled" that one party cannot interfere with natural water courses "to the injury of the other"); *Sojka*, 2013 WL 1453241, at *5 ("*Moody* and *Jenkins* do not stand for the proposition that any interruption in surface water's natural flow is unreasonable and actionable. Instead, the altered flow of water from a servient estate must harm the dominant estate."). Beyond this, the owner of the dominant estate has no right to control the flow of water on the servient estates. *See Cowley v. Reynolds*, 160 N.W. 241, 244 (Iowa 1916) ("[W]e think the defendants were within their rights in conducting the water upon their own land in their own way inasmuch as they brought it into its own course while yet upon their own land."); *Pohlman*, 107 N.W. at 1026 ("[B]eyond announcing the rule that as between dominant and servient estate owners, the latter must take the flowage, and may not cast it back, the authorities are silent as to any further duty owing to the former."); *Mullen v. Nat. Gas Line Co. of Am.*, No. 10–1604, 2011 WL 2041996, at *4–5 (Iowa Ct. App. May 25, 2011) (holding that the water continued to flow in the "general course of natural drainage" despite a "detour" that was wholly on one party's property).

*Miller v. Perkins*, 216 N.W. 27 (Iowa 1927) is instructive. In *Miller*, this court stated that the servient estate was "burdened with the care of water" from

the dominant estate. *Id.* at 28. "It, of course, follows, however, that, after the water left the [dominant estate] in its natural flowage, it was no concern of [the dominant estate] how this water was taken care of by the [servient estate] so long as its treatment and handling did not interfere with the [dominant estate]." *Id.* "In other words, the owner of the [servient estate] had a right to change the course of this water after it left the [dominant estate] . . . in any manner he saw fit, but in doing this he was bound to see that his handling of the water was not to the injury of [the dominant estate]." *Id.*; *see also Eppling v. Seuntjens*, 117 N.W.2d 820, 823 (Iowa 1962) ("Of course defendant could turn the water that came onto his land from plaintiff's in any manner he saw fit so long as he did not cast it upon plaintiff's adjoining land to his damage."); *cf. State ex rel. Wasserman v. City of Fremont*, 20 N.E.3d 664, 670 (Ohio 2014) (per curiam) ("The purpose of the easement in this case was and remains to drain water from the Wasserman property into Minnow Creek. If the rerouted pipe still accomplishes that purpose, the rerouting does not violate the purpose of the easement."). The same analysis applies here.

The Robinsons contend that certain platting documents support their claim for greater common law drainage rights. The platting documents were created when CIPCO expanded its substation in 2014. We disagree that the platting documents created additional drainage rights in favor of the Robinsons. The platting documents merely reiterate the general obligations established in our caselaw. For example, in the "Fenceline and Drainage Deed Restriction," CIPCO agreed "to extend any natural surface waterway or tile drainage system for adjoining properties" and "perpetually maintain said drainage system and protect from any obstruction or any type of blockage which would cause damage to adjoining properties." This language merely affirms CIPCO's common law

obligation to receive drainage from the Robinsons, and to not cause harm to the Robinsons' estate by obstructing the operation of the existing drainage system for that purpose. It does not create an additional right to specific routing or a drainage easement at a fixed route across CIPCO's property.

Just as the Robinsons have no common law right to control the course of water on others' property, they have no common law right to access and repair the tile line on the servient properties. The Robinsons cite overland and right-of-way easement cases providing a right to access and repair. These cases are inapposite here. The Robinsons do not have an overland, right-of-way easement; they have a legal and natural drainage easement. The proper remedy for an alleged obstruction of drainage is not an unfettered right of access to another's property but is an action "in equity by injunction against the wrongful obstruction of the natural flow of waters." *Blink v. McNabb*, 287 N.W.2d 596, 601 (Iowa 1980) (en banc); *see also Moody*, 402 N.W.2d at 757 ("When the parties themselves cannot agree on a plan to clear the obstructions, an equity court should, as it did here, devise one."); *Jenkins*, 212 N.W.2d at 419 ("[E]quity will enjoin the obstructing of such natural flow of water when necessary to prevent irreparable harm."); *Countryman v. Lex*, No. 18–0979, 2019 WL 3317352, at *2 (Iowa Ct. App. July 24, 2019) (requiring the servient property to replace tiles). The servient estate's duty to accept water and the availability of monetary and injunctive relief for any violation of that duty makes the right of access unnecessary. *See Ditch*, 212 N.W.2d at 448; *Pohlman*, 107 N.W. at 1026 ("[T]he necessity, out of which the servitude is born, is obviously satisfied by acceptance at all times of the water to the extent of the natural flow. Where necessity ends, the reason for the rule, and hence the rule itself, ends.").

In sum, the common law grants the Robinsons a "legal and natural" drainage easement. *Ditch*, 212 N.W.2d at 448 (quoting *Witthauer*, 133 N.W.2d at 74). This requires the servient estates to receive drainage in "the natural flow or passage of the waters." *Id.* (quoting *Witthauer*, 133 N.W.2d at 75); *see also Moody*, 402 N.W.2d at 757 ("The servient estate is obligated to receive water . . . ."); *Wharton v. Stevens*, 50 N.W. 562, 564 (Iowa 1891) ("[T]he authorities all hold that when water . . . flows in well-defined course . . . and seeks discharge in a neighboring stream, its flow cannot be arrested or interfered with by the land-owner, to the injury of the neighboring proprietors."). This does not create an easement along a fixed route over the servient properties. *See Hunt v. Smith*, 28 N.W.2d 213, 221 (Iowa 1947) (stating that the servient estate only "owes a servitude to . . . *receive* all water" (emphasis added)); *Pohlman*, 107 N.W. at 1026 ("[T]he owner of a dominant estate . . . may not dictate the disposition of the waters after passing from his land."); *Livingston*, 21 Iowa at 168 ("The inferior proprietor could not obstruct the flow to the injury of the superior proprietor, nor could the latter make the servitude more burdensome."). Instead, once the drainage enters the servient properties, CIPCO and the Ludolphs are free to reroute the drainage so long as their actions do not cause "detriment or injury" to the Robinsons. *Ditch*, 212 N.W.2d at 448 (quoting *Witthauer*, 133 N.W.2d at 75); *see also McKeon*, 29 N.W.2d at 521; *Miller*, 216 N.W. at 28.

## B.

We next address the Robinsons' statutory arguments. The Robinsons claim that Iowa Code chapter 468 affords them expansive drainage rights and that CIPCO committed "blatant Code violations" in rerouting the tile line. We disagree.

"Iowa Code chapter 468 governs the creation and function of drainage districts" and private drainage rights. *Hardin Cnty. Drainage Dist. 55, Div. 3, Lateral 10 v. Union Pac. R.R.,* 826 N.W.2d 507, 510 (Iowa 2013). It is divided into five subchapters. Subchapter I, titled "Establishment," primarily details the procedures for the creation and operation of drainage districts. Iowa Code §§ 468.1–.269. The Robinsons' argument that CIPCO violated chapter 468 relies on two Code sections found within this subchapter. Iowa Code section 468.148 states, "Any person who shall . . . divert, obstruct, or willfully injure any ditch, drain, or other drainage improvement authorized by law shall be liable to the person or persons owning or possessing the lands for which such improvements were constructed . . . ." Section 468.149(1)(*a*) then makes it a serious misdemeanor if, without legal authority, a person willfully "[d]iverts, obstructs, impedes, or fills up any ditch, drain, or watercourse." *Id.* § 468.149(1)(*a*).

The Code sections on which the Robinsons rely are inapplicable here. *See Doe v. State,* 943 N.W.2d 608, 610 (Iowa 2020) ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012))). This case does not involve a drainage district or the law related to the establishment, operation, or impairment of a drainage district. Instead, this is a dispute solely concerning individual drainage rights.

This case solely involves individual drainage rights and is governed by subchapter V, titled "Individual Drainage Rights." Iowa Code §§ 468.600–.634; *see also State v. Tague,* 676 N.W.2d 197, 201–02 (Iowa 2004) (stating that the title of a statute can help determine legislative intent). Iowa Code section 468.621

is the only statutory provision cited by the Robinsons that falls within subchapter V. Section 468.621 states, "Owners of land may drain the land in the general course of natural drainage by constructing or reconstructing open or covered drains, discharging the drains in any natural watercourse or depression so the water will be carried into some other natural watercourse, and if the drainage is wholly upon the owner's land the owner is not liable in damages for the drainage unless it increases the quantity of water or changes the manner of discharge on the land of another." *Id.*

We agree with the Robinsons that this statute permits a dominant estate to drain their property across a servient estate "in the general course of natural drainage." *Id.* We disagree with the Robinsons that this statute creates a statutory right to an easement along the original route of the first tile line installed and a right of access and repair to the tile on a servient estate. Their argument is wholly unsupported by the text of the statute. The statute is silent as to drainage rights along a fixed route, a right of access to the servient estate, and a right of repair of drainage tile on others' properties. *See Janssen v. Sec. Nat'l Bank of Sioux City* (*In re Est. of Janssen*), 7 N.W.3d 516, 524 (Iowa 2024) ("We cannot read additional requirements into the statute by deviating from its plain language."); *Moulton v. Iowa Emp. Sec. Comm'n*, 34 N.W.2d 211, 216 (Iowa 1948) ("The court is not at liberty to read into the statute provisions which the legislature did not see fit to incorporate, nor may it enlarge the scope of its provisions by an unwarranted interpretation of the language used." (quoting *Ford Motor Co. v. Appeal Bd. of Mich. Unemployment Comp. Comm'n*, 25 N.W.2d 586, 587–88 (Mich. 1947))).

C.

We next address the Robinsons' assertion that they have a prescriptive easement across the servient properties along a fixed route and a related right to access the drainage tile on the servient properties. "Under Iowa law, an easement by prescription is created when a person uses another's land under a claim of right or color of title, openly, notoriously, continuously, and hostilely for ten years or more." *Johnson v. Kaster*, 637 N.W.2d 174, 178 (Iowa 2001).

The Robinsons have failed to establish a prescriptive easement. First, the mere fact that the Robinsons exercised their drainage rights does not automatically render the tile line under the servient properties a hostile or adverse use of those properties. *See Brede v. Koop*, 706 N.W.2d 824, 828 (Iowa 2005) ("Hostility refers to declarations or acts that show the declarant or actor claims a right to use the land."); *Mensch v. Netty*, 408 N.W.2d 383, 387 (Iowa 1987) ("Continued use does not, by mere lapse of time, become hostile or adverse."). In fact, section 468.621's grant of drainage rights to the Robinsons leads to the conclusion that their use of the servient estates was permissive. *See Mensch*, 408 N.W.2d at 387 ("Permissive use is not adverse or under a claim of right.").

Further, there is no evidence that the Robinsons have ever personally accessed the CIPCO or Ludolph properties to maintain the tile line in the sixty-plus years they have lived on their property. This alone causes serious doubt that the Robinsons can establish that they acquired a prescriptive easement across the servient properties along the route of the original tile line. *See Johnson*, 637 N.W.2d at 178–79 (stating that a party "must show something more than use for the statutory period" and that a party "must also show they claimed an easement as of right, and this must be established by evidence

distinct from and independent of their use"). The record is also devoid of evidence demonstrating how the Robinsons' drainage practices constituted an open or notorious use across the servient properties. *See Anderson v. Yearous*, 249 N.W.2d 855, 861 (Iowa 1977) (stating that these elements require that the "party had express notice thereof, either actual or from known facts of such nature as to impose a duty to make inquiry which would reveal existence of an easement"). It was the Robinsons' heavy burden to prove the existence of a prescriptive easement. *See Brede*, 706 N.W.2d at 828 ("The facts relied upon to establish a prescriptive easement 'must be strictly proved. They cannot be presumed.' " (quoting *Simonsen v. Todd*, 154 N.W.2d 730, 736 (Iowa 1967))). They have failed to do so.

### D.

Having established that the Robinsons do not have a drainage easement along a fixed route across the servient estates, the only remaining issue is whether CIPCO's rerouting of the drainage tile in 2014 caused a "detriment or injury" to the Robinsons. *Ditch*, 212 N.W.2d at 448 (quoting *Witthauer*, 133 N.W.2d at 75). The district court concluded that the Robinsons failed to create a triable issue of fact on this point. We agree.

The Robinsons did not introduce into the summary judgment record any evidence showing that CIPCO's rerouting of the tile line in 2014 caused any injury or detriment with respect to the drainage of their property. There was no expert evidence establishing the soil conditions on the Robinson property before and after CIPCO rerouted the tile line. There was no other evidence establishing the soil conditions on the Robinson property before and after CIPCO rerouted the tile line. There was no evidence establishing the crop yields before and after CIPCO rerouted the tile line. While the Robinsons did produce pictures of water

ponding in certain fields between 2021 and 2023, these pictures do not answer the operative question: whether CIPCO's actions caused damage to the Robinsons. In the absence of such evidence, the district court correctly granted the defendants' motion for summary judgment because there is insufficient evidence to conclude that CIPCO interrupted "the natural flow or passage" of the drainage "to the detriment or injury of the" Robinsons. *Id.* (quoting *Witthauer*, 133 N.W.2d at 75).

There is also insufficient evidence in the record to fix a damage award. Martin's affidavit contains conclusory statements that prior to the 2014 tile rerouting his "farm drained much better" and that, in his opinion, "these drainage issues caused . . . a loss of 50 bushels per acre over a minimum of 35 acres" and that the value of the Robinson property that drains across the CIPCO property "decreased by $8,000.00 per acre." The Robinsons cite *Rausch v. City of Marion* (*In re Condemnation of Certain Rights in Land for the Extension of Armar Drive Project by the City of Marion*), 974 N.W.2d 103, 111 (Iowa 2022), for the premise that, based on Martin's education and experience on the Robinson property, "Martin is more than well-qualified to express his opinion of a decline in value" and that "he is an expert witness on this issue."

Setting aside the fact that Martin has not lived on the Robinson property since 1980, we believe that the Robinsons overlook a threshold matter. The question presented in *Rausch* was whether "owners of commercial property who do not qualify as experts [should] be allowed to support their valuation by testifying about allegedly comparable sales of property owned by others?" *Id.* at 106. That is fundamentally different than the question of whether the Robinsons suffered a "detriment or injury" caused by an alteration of the servient estate's drainage, *Ditch*, 212 N.W.2d at 448 (quoting *Witthauer*, 133 N.W.2d at 75), in the

form of a crop yield loss in 2021 or a decrease in property value. On this issue, we have long recognized that "[t]here is a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages." *Pavone v. Kirke,* 801 N.W.2d 477, 495 (Iowa 2011) (quoting *Olson v. Nieman's, Ltd.,* 579 N.W.2d 299, 309 (Iowa 1998)). "If it is speculative and uncertain whether damages have been sustained, recovery is denied." *Orkin Exterminating Co. v. Burnett,* 160 N.W.2d 427, 430 (Iowa 1968); *see also Hoefer v. Wis. Ed. Ass'n Tr.,* 470 N.W.2d 336, 340 (Iowa 1991) (en banc) ("Where resort to speculation or conjecture is necessary to determine whether damages have been sustained as a result of a defendant's acts, recovery must be denied."). We have previously held that evidence was insufficient to sustain an award for damages when a plaintiff "produced scant evidence to establish the reduction in [property] value," *Sun Valley Iowa Lake Ass'n v. Anderson,* 551 N.W.2d 621, 641 (Iowa 1996), and when there was only a "mere scintilla" of evidence based upon the "meager statements of plaintiff," *Petersen v. Farmers Cas. Co.,* 226 N.W.2d 226, 232 (Iowa 1975).

Similarly, when viewing the evidence in the light most favorable to the Robinsons, Martin's affidavit is insufficient to remedy the lack of competent evidence demonstrating damage to the Robinsons' 2021 crop yield or their property value caused by CIPCO's alteration of the drainage across its land. Martin makes no allowance for other potential causes for any claimed crop loss. *See Moody*, 402 N.W.2d at 758 (holding that there was "insufficient evidence to fix damages" for crop loss when the plaintiffs "speculative estimates" made "no allowance . . . for damages the crops would ordinarily receive from surface drainage"). Further, without competent evidence of the original property value and current property value, past crop yields and the 2021 crop yield, or costs

associated with harvesting and selling the allegedly lost crops, the Robinsons' claims are far too speculative because "the evidence here is insufficient to establish either the fact of damage or a reasonable basis from which damages can be inferred or approximated." *St. Malachy Roman Cath. Congregation of Geneseo v. Ingram*, 841 N.W.2d 338, 354 (Iowa 2013); *see also Moody*, 402 N.W.2d at 757–58 (affirming the district court's conclusion that the evidence was insufficient to fix damages where there was "no evidence in the record of the value or cost of cultivating, harvesting, or marketing any growing crop had it not been destroyed"); *Eppling*, 117 N.W.2d at 824 (holding that there was "insufficient evidence of the proper measure of damages" despite the plaintiff's testimony regarding the number of acres affected, the expected number of bushels per acre, and the reasonable price of the crops per bushel affected by drainage issues).

IV.

The Robinsons also challenge the district court's dismissal of their common law and statutory nuisance claims. At common law, "[a] private nuisance is an actionable interference with a person's interest in the private use and enjoyment of his land." *Larsen v. McDonald*, 212 N.W.2d 505, 508 (Iowa 1973). Iowa Code section 657.1(1) defines a nuisance as "[w]hatever is injurious to health, indecent, or unreasonably offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere unreasonably with the comfortable enjoyment of life or property." This is the codification of our common law nuisance standard. *Vagts v. N. Nat. Gas. Co.*, 8 N.W.3d 501, 508 (Iowa 2024) ("The general assembly codified the common law understanding of nuisance in Iowa's earliest statutes."). The Code also provides that the violation of certain Code sections may create a statutory nuisance. *See* Iowa Code § 468.149(2) ("Any

unlawful act described in subsection 1 is a nuisance . . . ."); *id.* § 657.2(4) (stating that "unlawfully diverting [any river, stream, or pond] from its natural course or state, to the injury or prejudice of others" constitutes a nuisance).

Because we conclude that the Robinsons failed to generate a question of material fact as to whether CIPCO damaged or interfered with their property, we must also necessarily conclude that their common law and statutory nuisance claims fail as a matter of law. *See Larsen*, 212 N.W.2d at 508 ("One must use his own property so that his neighbor's comfortable and reasonable use and enjoyment of his estate will not be unreasonably interfered with or disturbed." (quoting *Bates v. Quality Ready-Mix Co.*, 154 N.W.2d 852, 857 (Iowa 1967))). As discussed at length above, the record does not demonstrate that CIPCO created an actionable, unreasonable interference with the Robinson property, nor does it demonstrate that CIPCO engaged in any unlawful conduct or diversion of a watercourse as required by Iowa Code sections 648.149(2) and 657.2(4).

V.

The Robinsons also appeal the district court's award of attorney fees. Our review is for an abuse of discretion. *K.C. v. Iowa Dist. Ct.*, 6 N.W.3d 297, 301 (Iowa 2024). "An abuse of discretion occurs when a court's ruling is based on grounds that are unreasonable or untenable 'or when the record lacks substantial evidence to support the court's conclusion.' " *Id.* (citation omitted) (quoting *Pierce v. Nelson*, 509 N.W.2d 471, 473 (Iowa 1993)). We cannot find an abuse of discretion here.

Under Iowa Code section 649.5(1), "Before bringing suit to quiet a title to real estate, a party may make a written request to the person holding an apparent adverse interest or right in the property asking that such person . . . execute, have acknowledged, and deliver a quitclaim deed to the

property to such requesting party." "If the person holding an apparent adverse interest or right in the property fails to comply within twenty days of receiving the written request, . . . the court may assess, in addition to the ordinary costs of court, a reasonable attorney fee for the requesting party's attorney." *Id.* § 649.5(3).

The Robinsons do not challenge whether CIPCO followed the section 649.5 procedure or whether Coggon Solar was entitled to attorney fees. Rather, they argue that the quitclaim deed sent to them made improper demands for them to relinquish their drainage rights, that CIPCO should not be considered a successful party in this litigation, that the deed CIPCO sent to the Robinsons did not qualify as a quitclaim, and that the amount of the fee award is excessive. We disagree.

CIPCO did not request that the Robinsons relinquish the entirety of their drainage rights. The quitclaim deed sent to the Robinsons specifically stated that CIPCO would continue "extending any natural surface waterway or tile drainage system for adjoining properties to be perpetually maintained and protected from any obstruction or any type of blockage which would cause damage to adjoining properties." CIPCO only requested that the Robinsons quitclaim any claimed interest in an easement "for a particular route of drainage tile" on the CIPCO property. CIPCO was successful on this claim. Awarding attorney fees is thus consistent with the purpose of section 649.5 "to avoid litigation, and enable the landowner to get rid of clouds upon his title by negotiation and agreement rather than by decree of court." *Collier v. Wetmore,* 145 N.W. 944, 947 (Iowa 1914).

Similarly, the Robinsons' argument that the quitclaim deed failed to meet the requirements of section 649.5 because it did not require them to convey all of their interest in the property is without merit. In *Knight v. Cavanagh,* 203 N.W.

11, 11–12 (Iowa 1925), this court recognized that a quitclaim deed can convey only a portion of an individual's rights in an action to quiet title. In *Knight*, the grantor executed a quitclaim "for the sole and only purpose of relieving the homestead right of grantee in and to the premises herein described." *Id.* at 11. However, the deed was "not intended to surrender or relinquish any right which the grantor may have or acquire . . . in event the homestead right of grantee therein be relinquished, surrendered, lost or abandoned." *Id.* This court held that this language was sufficient to constitute a quitclaim deed. *Id.* at 12; *see also Zimmerman v. Kirchner*, 131 N.W. 756, 757–58 (Iowa 1911) (stating that a deed was a quitclaim when it conveyed a tract of land but reserved the grantor's right to an easement for a driveway); K.A. Drechsler, Annotation, *Rights or Interests Covered by Quitclaim Deed*, 162 A.L.R. 556 (1946), Westlaw ("[A] quitclaim deed passes all the right, title, and interest which the grantor has at the time of making the deed and which is capable of being transferred by deed, *unless a contrary intent appears . . . .*" (emphasis added)); *cf.* 1 Marlin M. Volz. Jr., *Iowa Practice Series: Methods of Practice* § 14:8, at 458 (2024 ed. 2024) (stating that the "holder of an easement may release" the easement "by quit claim deed, which may describe the easement and the portion of land affected with particularity"). Likewise, the quitclaim sent by CIPCO was not inadequate merely because it did not request that the Robinsons convey the entirety of their drainage rights.

Finally, we cannot conclude the district court abused its discretion in determining the amount of the attorney fee award. "[T]he district court is considered an expert in what constitutes a reasonable attorney fee, and we afford it wide discretion in making its decision." *Ferguson v. Exide Techs., Inc.*, 936 N.W.2d 429, 436 (Iowa 2019) (per curiam) (quoting *GreatAm. Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 733 (Iowa

2005)). The Robinsons claim that the fees were "excessive" and criticize the use of multiple attorneys. However, beyond that, the Robinsons have no specific criticisms of the time incurred, except for the filing of two summary judgment motions instead of one. CIPCO responds that the time spent on the second motion relating to nuisance damages was excluded from their fee calculation because it did not pertain to quiet title issues. We note that the fee claim was supported by itemized time entries and that the time was billed at a reasonable rate. We also note that the quiet title claim was far more complicated than a typical, run-of-the-mill quiet title dispute. This case featured multiple plaintiffs and multiple defendants. The parties engaged in extensive discovery. Litigation continued for over two years. And, the viability of a $150 million solar farm project hung in the balance while this issue was litigated. Substantial evidence supports the award.

VI.

For the foregoing reasons, we affirm the rulings of the district court. The Robinsons have a legal and natural easement to drain surface water onto the servient estates. This does not establish a drainage easement along a fixed route across those properties, nor does it create a right of access to repair the tile line. Rather, the servient estates are free to carry the drainage across their property in the manner they determine appropriate so long as they do not alter the "general course of natural drainage," Iowa Code § 468.621, and "the natural flow or passage of the waters" is not "interrupted or prevented . . . to the detriment or injury" of the Robinsons, *Ditch*, 212 N.W.2d at 448 (quoting *Witthauer*, 133 N.W.2d at 75).

**Affirmed.**